### In re DIXON.

#### No. 3665.

District Court, S. D. Georgia, Augusta Division.

April 30, 1943.

978

Wm. T. Revell, of Louisville, Ga., for petitioner.

Gordon Lanier, of Bartow, Ga., for defendant.

LOVETT, District Judge.

 This is an application by a creditor of the bankrupt to re-open the estate closed by the referee.[1] The matter is addressed to the discretion of the court.[2] Such applications may be granted ex parte

---

[1] 11 U.S.C.A. § 11, sub. a(8).
[2] In re Schreiber, 2 Cir., 23 F.2d 428;

[1] Collier on Bankruptcy, 14th Ed., § 2.49, page 230.

and *without notice to any one.*[3] However, the administrator of the estate of the bankrupt's wife was given notice, for reasons herein shown, and has been fully heard.

It is my opinion the case should be re-opened. The reasons will be stated.

On his voluntary petition Dixon was adjudicated a bankrupt on August 20, 1942, and died September 8, 1942, one day before the first meeting of his creditors.

He scheduled one creditor, W. T. Raleigh Company (Schedule A-3) and these assets (Schedule B-1): (1) a one-sixth undivided interest in and to 240 acres of land in Jefferson county, Georgia, of the value of $300; (2) a one-sixth interest in and to an unimproved lot in the Town of Wadley, Georgia, of the value of $35. His schedules also disclosed that he had one policy of insurance on his life of the face value of $1,000, on which approximately $300 had been borrowed (Schedule B-3).

The bankrupt made claim in his schedules to the constitutional exemption allowed in Georgia[4] and asked that his interest in the 240-acre tract and in the Wadley lot be set apart, but, should the land be sold by a trustee in bankruptcy, that the homestead be set apart in cash to the amount of $1,600 (see Schedule B-5). The homestead was claimed as "an aged or infirm person" under Georgia Code, § 51-101. He had neither spouse nor children dependent on him.

The "Statements of Affairs", filed August 25, 1942, contained these pertinent questions and answers:

"Q. 8(a) What property do you hold in trust for any other person? A. $240 for estate of Mrs. Mary Dixon, deceased.

"Q. 11. What property have you transferred or disposed of other than in the ordinary course of business, during the year immediately preceding the filing of the original petition herein? A. A one-sixth undivided interest to a small amount of household furniture and personal property, and one-sixth undivided interest in farm tools and Ford Automobile."

At the first meeting of creditors, the bankrupt being dead his attorney appeared, testified, and urged the allowance of homestead exemption as prayed. The referee set apart the bankrupt's interest in the real estate heretofore mentioned, and in his order recited that the bankrupt left no wife or minor children, but did leave children sui juris who would, by operation of law, inherit his real estate "subject to his then existing legal debts".

November 10, 1942, was regularly fixed as the last date for filing objections to discharge.

The creditor had notice of the first meeting of creditors, but did not appear, though the creditor did file claim on October 12, 1942. October 26, 1942, creditor was notified of last date for filing objections to discharge, which date was extended by appropriate order to November 30, 1942. Discharge was granted December 7, 1942, and the case closed on the same date.

The creditor now says the bankruptcy court should require administered as assets:

(a) Any interest of bankrupt in the estate of the deceased wife, she having died before the petition in bankruptcy was filed;

(b) The undivided interest in the real property (2 parcels);

(c) Any interest of the bankrupt in the $240 trust fund;

(d) Any interest of the bankrupt in farm tools, Ford automobile, etc.;

(e) Cash surrender value in life insurance in excess of loan.

Movant urges that the allowance of any homestead exception was unauthorized.

### Re-Opening Estate.

█ Section 2, sub. a(8) of the Chandler Act, 11 U.S.C.A. § 11, sub. a(8), provides for re-opening estates "for cause shown". The earlier law provided for re-opening cases upon discovery of unadministered assets. It could well be argued that the old law "required" re-opening in such cases, but that the new law, by its broader language, gave the court a wider discretion in the matter. The court may refuse to re-open. Laches may be a justification for refusal to re-open. The court may refuse to go to the time, trouble and expense of re-opening in case of a small claim.[5] Similarly, it would seem to me that the court could refuse to re-open where the asset to be administered was of small value and the ultimate dividend inconsequential.

█ A proceeding to re-open is of lim-

3 8 C.J.S., Bankruptcy, § 486 b, page 1359; 1 Collier, § 2.51.

4 Ga.Code, § 51-101.
5 Collier, supra, § 2.49.

ited nature, only establishes prima facie the right to re-open, and is not a final adjudication of facts.[6]

### Laches.

■ As indicated in the reference to Collier, supra, laches would bar re-opening.

■ The creditor's claim was twelve years old when this bankruptcy was instituted. On the other hand, bankrupt's assets seem to have been realized by inheritance from his wife, who died about a year before the bankruptcy proceedings were begun, and the creditor seems to have acted with reasonable promptness thereafter.

### Homestead.

Georgia Code, § 51-101: "There shall be exempt * * * of the property of * * * every aged or infirm person, * * * realty or personalty, or both, to the value of * * * $1,600 * * *."

The Bankruptcy Act provides that death of the bankrupt does not abate the proceedings and preserves the bankrupt's exemption, Section 8, 11 U.S.C.A. § 26: "* * * in case of death, the bankrupt's right to exemption, if any, shall be preserved, * * * and it shall upon application be * * * awarded to the spouse or dependent children surviving at his death to the exclusion of his personal representatives."

Compare old Section 8, 11 U.S.C.A. § 26, which preserved rights of dower, etc.: "The death or insanity of a bankrupt shall not abate the proceedings, but the same shall be conducted and concluded in the same manner, so far as possible, as though he had not died or become insane: Provided, That in case of death the widow and children shall be entitled to all rights of dower and allowance fixed by the laws of the State of the bankrupt's residence."

The new section reflects an attitude of "fairness and equity to the bankrupt's family", but eliminates the earlier possibility of both an allowance to the widow and children and a setting apart of exemptions to the personal representatives.[7]

■ Despite Collier's language: "The personal representative of the deceased bankrupt has been excluded", it is my view that the draftsmen of the new section did not have in mind the type of homestead allowed to an aged or infirm person by the Constitution of Georgia. Giving effect to the declaration that homesteads are preserved and limiting the exclusion of the personal representative to those cases where there is a surviving spouse or dependent minor children, the referee's allowance of homestead at least is debatable. While the title and right to property is determined as of the time of the filing of the proceedings, here the bankrupt died before the exemption was set apart. To whom was it set apart? Should funeral expenses or expenses of last illness of the bankrupt be paid out of it? If so, where does the excess go? If it were money in bank, whose check could the bank honor? I think the creditor should be heard by the referee on these questions. Unless the estate is re-opened, he can never have a final adjudication as to the validity of the homestead.

■ It is true the creditor could have appeared and objected to the allowance of the exemption. He failed in diligence when he was absent and the asset was administered, i. e., set apart. He may be said to have failed again when he filed no petition for review. That should not debar him, however, where in furtherance of justice a closed estate should be re-opened, for at any stage of the proceeding the District Judge may review without petition the referee's action in administrative matters,[8] and the provisions for review generally apply only to formal orders entered upon notice and hearing.[9]

### Trust Fund.

■ It appears that the bankrupt probably had a one-sixth interest in this $240 trust fund (assuming it not to be chargeable with any expense of administration in the Ordinary's Court). There is certainly no reason to re-open a case for $40, if that be all. The bankrupt's attorney could claim that entire amount for his fee, and the creditor be in no better position. It appears an inescapable conclusion, however, that here is an unadministered asset.

---

6 Collier, supra, § 2.51, note 4.
7 Collier, supra, § 8.01, page 1061.
8 See Goodman v. Street, 9 Cir., 65 F. 2d 686(4).

9 See Fazakerly v. E. Kahn's Sons Co., 5 Cir., 75 F.2d 110(3).

### Insurance.

The policy in this case [10] exhibited to the court was issued in 1912, names the wife as beneficiary (by endorsement) "if living at my decease, otherwise to my executors, administrators or assigns". Since the policy is payable to executors, administrators, etc., of the bankrupt, the beneficiary having died before the proceedings in bankruptcy were instituted, the policy may fall outside the 1933 legislative act exempting policies with named beneficiaries from administration in bankruptcy. See Georgia Code, § 56-905. Georgia's 1933 Act is patterned after the New York law, and decisions touching the New York law are persuasive in construing the Georgia law. The courts there seem to hold that if the bankrupt is indebted to the creditor before the enactment of the statute, it has no application.[11] Here the debt arose in 1930.

█ It is now elementary that only the cash surrender value is administered in any event.[12]

The parties have here assumed that there was no substantial cash surrender value to the subject policy, that is, in execss of the $300 loan (approximate). Not so, for the cash surrender value as shown on the policy table amount to $383.47 at the end of the twentieth year, with substantial annual increases in value. The policy was 29 years old at the time of bankruptcy and the cash surrender value approximated $565, according to the tables, as I read them.

### Interest in Personal Property of Wife.

The circumstances of the transfers indicated in the Statement of Affairs could well be examined further, but would hardly justify, of itself, a re-opening of the case. From the verified allegations of paragraph 7 of the motion to re-open, for example, it appears that the bankrupt's interest in the automobile may have approximated no more than $40. For a trustee to recover this sum would require a setting aside of any transfer and standing alone would probably prove unprofitable. However, a further examination by the referee of all of the transfers made by the bankrupt, as well as a more complete disclosure of all of the facts surrounding the so-called *trust fund,* may result in the discovery of other assets which should be administered.

### Conclusion.

The natural inclination is to treat the case as a closed matter. The creditor was not sufficiently interested to appear at the first meeting, and the referee was certainly not required to conduct painstaking inquiry to protect the rights of creditors not diligent enough to be present and to look out for themselves. On the other hand, the exemptions were set aside before the creditor proved his claim, and within twenty days of adjudication. Being a non-resident perhaps he was not allowed sufficient time to urge his objections.

█ Here the parties are contentious. The creditor elicits little sympathy on a claim 12 years old which he did not follow up diligently. The case will be a troublesome one. But it appears there are several hundred dollars that could be administered in trust fund, insurance proceeds and personal property, and, if the homestead exemption was invalid, an additional amount from real estate, provided, of course, the allegations made by the creditor are established by proof. The amount is too substantial to permit a refusal to re-open to be justified.

The case should be re-opened. The creditor should furnish indemnity, however, for future costs against the possibility his allegations are not made good. An order may be taken to become effective only on deposit or indemnity for costs of $50 by the creditor.

[10] No. 623308, issued by the Mutual Benefit Life Insurance Co. of Newark, New Jersey, December 28, 1912. (Insured's age at date of issue, 40 years).

[11] In re Lipton, D.C., 4 F.Supp. 799; In re Neumaier, D.C., 11 F.Supp. 341; In re Wark, D.C., 14 F.Supp. 915; In re Gordon, 2 Cir., 90 F.2d 583.

[12] 1 Collier, supra, §§ 6, 16, p. 862; 4 Collier, supra, §§ 70(a), 70.23.