In re Wolfgang M. MENK, Debtor.

Wolfgang M. Menk, Appellant,

v.

Michael J. Lapaglia and Temecula Ready Mix, Inc., Appellees.

BAP No. SC–98–1816–KRyB.
Bankruptcy No. 95–14067.
Adversary No. 97–90319.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 20, 1999.

Decided Nov. 5, 1999.

Richard Schwabe, Vista, CA, for Wolfgang M. Menk.

Thomas A. Shpall, Rosenberg, Shpall & Associates, San Diego, CA, for Micheal J. La Paglia and Temecula Ready Mix.

Before KLEIN, RYAN and BRANDT, Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

The debtor-appellant lost the trail when he misunderstood what it means to reopen a closed bankruptcy case. Now he is mired in a poorly-explored jurisdictional swamp involving the relationship of 28 U.S.C. § 1334(a) to § 1334(b) and the difference between bankruptcy "cases" and bankruptcy "civil proceedings."

The debtor has appealed the order reopening his bankruptcy case and fixing a deadline for the moving creditor to file an adversary proceeding to determine whether a debt was discharged. Relying on the fallacy that defeating the reopening would pull the jurisdictional carpet from under the discharge litigation, the debtor has not appealed the subsequent judgment declaring the debt to be excepted from discharge.

We hold that we lack jurisdiction because the appeal is moot and because the debtor lacks standing.

The linchpin of our mootness analysis is that exercising jurisdiction pursuant to the "arising under" clause of 28 U.S.C. § 1334(b) to determine whether a debt is excepted from discharge does not require that the closed bankruptcy case first be reopened under 28 U.S.C. § 1334(a). Reopening is irrelevant to the bankruptcy court's jurisdiction to determine whether a debt is excepted from discharge. Hence, no effective relief could be fashioned if we were to reverse the reopening.

The debtor lacks standing because the consequences to him of reopening are too slight to "aggrieve" him.

The appeal must be DISMISSED.

### Jurisdiction

■ The bankruptcy court had jurisdiction to reopen the case. 28 U.S.C. § 1334(a). We determine our own jurisdiction, including the appellant's standing, sua sponte. *National Org. for Women, Inc. v. Scheidler,* 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994); *Vylene Enter., Inc. v. Naugles, Inc. (In re Vylene Enter., Inc.),* 968 F.2d 887, 889 (9th Cir. 1992).

### Facts

Appellees Michael LaPaglia and Temecula Ready Mix, Inc. ("TRM") obtained an award of compensatory and punitive damages against appellant Wolfgang Menk in 1991.

Menk filed his chapter 7 bankruptcy in 1995 shortly after appellees' counsel took his testimony in a judgment collection proceeding. Menk (who is himself a lawyer) listed LaPaglia and TRM at obsolete addresses from which the post office had ceased forwarding mail and gave no notice to their counsel.

Menk's bankruptcy case was closed within four months as a no-asset case in

which a discharge issued without challenge.

After the case was closed, LaPaglia and TRM moved to reopen the bankruptcy case, contending that they had previously been unaware of it, and asked the court to fix a deadline for filing a nondischargeability action.

Menk contested the motion to reopen, arguing that he had scheduled the debts correctly and had exercised appropriate diligence in determining the addresses of creditors.

The bankruptcy court, questioning neither Menk's standing nor whether his defense was material to the question of reopening, rejected the defense on the merits. Reasoning that Menk had not properly scheduled the creditors, the court ruled that complaints could be filed to determine the discharge status of the judgment debt under either 11 U.S.C. § 523(a)(3)(B) or the court's equitable powers by way of 11 U.S.C. § 105. Accordingly, it reopened the bankruptcy case and required that an adversary proceeding be filed within 60 days. An adversary proceeding was filed.

Menk tried to appeal the order reopening the case at once. Our motions panel, over a dissent, ruled that the appeal was interlocutory, treated the notice of appeal as a motion for leave to appeal, denied the motion, and dismissed the appeal.

Judgment was subsequently entered in the adversary proceeding excepting the improperly-scheduled debts from Menk's discharge as being based on willful and malicious conduct.

Menk then renewed his appeal from the order reopening the case but did not appeal the adversary proceeding judgment.

Menk explained at oral argument that he does not question the merits of the judgment excepting the debt from discharge and that, by appealing only the reopening, he thinks he is indirectly attacking the jurisdictional underpinnings of that judgment. In essence, he contends that, were we to reverse the reopening order, the judgment would evaporate.

*Issues*

1. Whether the appeal is moot on the basis that reversal of an order reopening a bankruptcy case would not invalidate a judgment of nondischargeability entered in an adversary proceeding that was filed after the case was reopened.

2. Whether a debtor has standing to appeal an order reopening a case in order to permit a creditor to prosecute a dischargeability action.

*Standard of Review*

The question of our own jurisdiction is an issue of law we are entitled to raise sua sponte and that we address de novo.

*Discussion*

Two aspects of jurisdiction are important in this appeal. Could effective relief be fashioned if the order reopening the case were to be reversed? Does the debtor have standing to complain about an order reopening the case at the request of a creditor who wants a debt determined to be excepted from discharge? We answer both questions in the negative.

I

■ This appeal is moot if we cannot fashion effective relief in the event of reversal. We must therefore focus on the relationship between subsections 1334(a) and (b) of the Judicial Code. 28 U.S.C. § 1334(a)–(b).

A

Basic bankruptcy jurisdiction is governed by three subsections of Judicial Code § 1334:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all *cases* under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the

district courts, the district courts shall have original but not exclusive jurisdiction of all *civil proceedings arising under* title 11, or *arising in* or *related to* cases under title 11.

(c)–(d) [abstention provisions]

(e) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of the property of the estate.

28 U.S.C. § 1334 (emphasis added). The bankruptcy courts are "units" of the district courts that exercise the district court's jurisdiction under terms specified by Congress. 28 U.S.C. § 157.

Our focus is on whether reopening a closed bankruptcy "case" under § 1334(a) is a prerequisite to subject-matter jurisdiction under § 1334(b) over a creditor's "civil [adversary] proceeding arising under title 11" seeking a determination that a debt is excepted from discharge. If not, then reversal of the reopening order could have no impact on a judgment entered in the adversary proceeding.

The answer requires close attention to the language of the statute, to the ambient structure of bankruptcy in connection with the meanings of "case" and "civil proceeding," and to the history of bankruptcy jurisdiction.

#### B

The important point about § 1334 is that there is no explicit requirement that a "case" be open under § 1334(a) for a court to act in a "civil proceeding" under § 1334(b).

Rather, § 1334(b) grants concurrent jurisdiction over civil proceedings, separate and distinct from exclusive jurisdiction over bankruptcy cases under § 1334(a).

The relationship between § 1334(a) and (b) is not rigid: the extent to which § 1334(b) jurisdiction can be exercised in the absence of an open bankruptcy case under § 1334(a) depends upon the nature of the civil proceeding, the essential parties, the impact on the estate, and the doctrines of ripeness, case and controversy, and mootness.

#### 1

The civil proceeding looming in the background of this appeal, the existence of which we cannot ignore, is a so-called non-dischargeability action seeking to have a debt determined to be excepted from discharge under 11 U.S.C. § 523(a)(3)(B) as an omitted debt that was incurred by willful and malicious conduct.

There are three salient points to be made about this cause of action.

■ First, subject-matter jurisdiction is conferred by the "arising under" clause of § 1334(b), as it is a cause of action created by the Bankruptcy Code, without existence outside the context of bankruptcy, and otherwise unknown to the law. 28 U.S.C. § 1334(b).

■ Second, the action could be commenced after the bankruptcy case has been closed, the controlling rule specifying that such an action may be filed "at any time." Fed.R.Bankr.P. 4007(b); *Fidelity Nat'l Title Ins. Co. v. Franklin (In re Franklin)*, 179 B.R. 913, 924 (Bankr. E.D.Cal.1995).

■ Finally, state courts have concurrent jurisdiction to entertain the action. 28 U.S.C. § 1334(b); *Franklin*, 179 B.R. at 923–24. Thus, the appellees could have filed their action in state court, leaving it to the debtor to decide whether to remove it to bankruptcy court and resist remand. 28 U.S.C. § 1452; Fed.R.Bankr.P. 9027; *Siragusa v. Siragusa (In re Siragusa)*, 27 F.3d 406 (9th Cir.1994);[1] *Franklin*, 179 B.R. at 923–24.

---

**1.** Strictly speaking, the Ninth Circuit's *Siragusa* decision affirming an abstention under 28 U.S.C. § 1334(c)(1) is better viewed as dictum rather than precedent because, as the Supreme Court subsequently instructed, the courts of appeals lack jurisdiction over issues

## 2

Now we parse § 1334(b), which has three subcategories of subject-matter jurisdiction that we refer to as § 1334(b) "arising under" jurisdiction, § 1334(b) "arising in" jurisdiction, and § 1334(b) "related to" jurisdiction.

Our concern is whether the exercise of § 1334(b) "arising under" jurisdiction over a nondischargeability action requires that there be an open case under § 1334(a).

The portion of the § 1334(b) statutory sentence addressing "arising under" jurisdiction does not refer to the existence of a presently-open bankruptcy case: "the district courts shall have original but not exclusive jurisdiction of all civil proceedings *arising under* title 11." 28 U.S.C. § 1334(b) (emphasis added).

Since this straightforward language does not refer to the existence of a "case" under § 1334(a), the text of the statute does not appear to require that the bankruptcy case must be open in order to exercise § 1334(b) "arising under" jurisdiction.

This conclusion squares with the fact that § 523(a)(3)(B) nondischargeability actions can be commenced "at any time," including after bankruptcy and in a non-bankruptcy court. Fed.R.Bankr.P. 4007(b); *Franklin,* 179 B.R. at 924. It would be an eccentric doctrine that would require reopening a case in federal court before an action could be prosecuted in state court.

As will be seen, the decisions hold that various aspects of the bankruptcy court's § 1334(b) jurisdiction continue after a case is either closed or dismissed.

■ Moreover, this construction of § 1334 makes sense in light of the tenet that justiciability requires that a dispute be ripe and present an actual controversy.

Those standard doctrines of federal jurisprudence apply in bankruptcy.

■ For a nondischargeability proceeding "arising under title 11" to be ripe and to present an actual controversy, the defendant self-evidently must be a "debtor," which status requires a bankruptcy case, and must either have a discharge in prospect or have already received a discharge. In other words, the minimum requirement is that there must have been a bankruptcy case at one time, the status of which is such that the specific controversy is not moot.

Several examples of potential application of § 1334(b) "arising under" jurisdiction illustrate the point.

■ If a bankruptcy discharge is in prospect or has been previously issued in a case under § 1334(a), then a disagreement between debtor and creditor regarding the question whether a particular debt is excepted from discharge would (unless time-barred) be ripe, and in controversy, and within § 1334(b) jurisdiction.

■ If the bankruptcy discharge has been denied or revoked, then the exercise of § 1334(b) jurisdiction to determine any exception to discharge would be a purely theoretical exercise, hence moot.

■ Finally, if no bankruptcy case has yet been filed under § 1334(a), there is neither "debtor," nor trustee, nor bankruptcy estate, nor discharge in prospect. Accordingly, it would be premature—i.e. not ripe—to exercise § 1334(b) jurisdiction to consider whether a debt is excepted from discharge.

Thus, while principles of ripeness require that a bankruptcy case have been commenced before one can exercise § 1334(b) "arising under" jurisdiction to determine if a debt is excepted from dis-

when Congress has used the phrase "not reviewable by appeal or otherwise". *Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 126, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995) (28 U.S.C. §§ 1441(d) & 1452(b)). Such a

provision applies to § 1334(c)(1) abstentions. 28 U.S.C. § 1334(d). The *Siragusa* dictum, nevertheless, comes from an impressive source.

charge, the status of the case as open or closed makes no difference so long as nothing has mooted the controversy.

This interpretation of § 1334(b) "arising under" jurisdiction is consistent with decisions finding that § 1334(b) jurisdiction survives closing of the bankruptcy case in various circumstances. In this respect, decisions that find continuing jurisdiction after dismissal (as opposed to closing) of cases are also relevant because a cause of action that survives dismissal inherently survives closing.

■■■ The damages action created by 11 U.S.C. § 362(h) for violation of the automatic stay survives closing or dismissal of the bankruptcy case and can be filed as a count in a civil action in federal court under § 1334(b) "arising under" jurisdiction. *Price v. Rochford*, 947 F.2d 829, 830–31 & n. 1 (7th Cir.1991) (" § 362(h) creates a cause of action that can be enforced after bankruptcy proceedings have terminated"); *Javens v. City of Hazel Park (In re Javens)*, 107 F.3d 359, 363 n. 2 (6th Cir.1997); *Fernandez v. GE Capital Mortgage Servs., Inc. (In re Fernandez)*, 227 B.R. 174, 179 (9th Cir. BAP 1998); *Davis v. Courington (In re Davis)*, 177 B.R. 907, 910 (9th Cir. BAP 1995).

■■■ Issues of dischargeability of particular debts survive. *Rodriguez v. Volpentesta (In re Volpentesta)*, 187 B.R. 261, 270–71 (Bankr.N.D.Ill.1995).

■■■ Issues of compensation and sanctions survive dismissal. *Elias v. U.S. Trustee (In re Elias)*, 188 F.3d 1160, 1162 (9th Cir.1999); *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525, 1533 (9th Cir. 1994); *Spacek v. Thomen (In re Universal Farming Indus.)*, 873 F.2d 1334, 1335–37 (9th Cir.1989); *Tsafaroff v. Taylor (In re Taylor)*, 884 F.2d 478, 481 (9th Cir.1989); *U.S.A. Motel Corp. v. Danning*, 521 F.2d 117 (9th Cir.1975).

■■■ Equitable subordination disputes under 11 U.S.C. § 510 similarly remain

viable. *Universal Farming*, 873 F.2d at 1335–36.

■■■ The bankruptcy court retains subject-matter jurisdiction to interpret orders entered prior to dismissal. *Beneficial Trust Deeds v. Franklin (In re Franklin)*, 802 F.2d 324, 326–27 (9th Cir.1986); *Koehler v. Grant*, 213 B.R. 567, 569 (8th Cir. BAP 1997).

■■■ The bankruptcy court has post-dismissal jurisdiction to entertain a dispute over the propriety of a turnover order on remand from an appellate court. *In re Statistical Tabulating Corp.*, 60 F.3d 1286 (7th Cir.1995), *cert. denied*, 516 U.S. 1093, 116 S.Ct. 815, 133 L.Ed.2d 759 (1996).

■■■ Contempt proceedings for violation of bankruptcy court orders can be initiated after closing. *Koehler v. Grant*, 213 B.R. 567 (8th Cir. BAP 1997).

■■■ Motions to distribute unclaimed funds under 11 U.S.C. § 347(a) can be considered after closing. *In re Taylor*, 216 B.R. 515, 521–22 (Bankr.E.D.Pa.1998).

■■■ Post-closing motions under Civil Rule 60, as incorporated by Bankruptcy Rule 9024, are permitted. *Compare* Fed. R.Bankr.P. 5010, advisory committee note, *with* Fed.R.Bankr.P. 9024 (*incorporating* Fed.R.Civ.P. 60), advisory committee note; *Cisneros v. United States (In re Cisneros)*, 994 F.2d 1462, 1466–67 (9th Cir.1993) (Rule 60(b)); *Wetherbee v. Willow Lane, Inc. (In re Bestway Prods., Inc.)*, 151 B.R. 530, 534–37 (Bankr.E.D.Cal.1993).

■■■ Writs of execution on money judgments may similarly be obtained post-closing. Fed.R.Bankr.P. 5010, advisory committee note.

These examples confirm our interpretation of § 1334(b): there is no jurisdictional requirement that a closed bankruptcy case be reopened before "arising under" jurisdiction can be exercised to determine whether a particular debt is excepted from discharge. Such a proceeding is purely a two-party dispute having no impact on the

bankruptcy estate or on other creditors and requiring no trustee.

### 3

In contrast, the analysis of § 1334(b) "arising in" or "related to" jurisdiction potentially differs because the pertinent portion of the statutory sentence does refer to bankruptcy cases: "district courts shall have original but not exclusive jurisdiction of all civil proceedings ... arising in or related to *cases under title 11*." 28 U.S.C. § 1334(b) (emphasis added).

This reference to "cases under title 11," coupled with the nature of the disputes included, arguably indicates that the existence of an actual case is important, especially with respect to § 1334(b) "related to" jurisdiction, the governing test for which looks to the rights of the trustee in the ongoing administration of the bankruptcy estate. *Celotex Corp. v. Edwards*, 514 U.S. 300, 308–09 n. 6, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995); *Fietz v. Great W. Sav. (In re Fietz)*, 852 F.2d 455, 457 (9th Cir.1988), *following Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984).

Once the administration of the bankruptcy case has ended, the relation to the case becomes so attenuated that § 1334(b) "related to" jurisdiction presumptively expires unless the court specifically retains jurisdiction.

█ To that end, it is agreed that the bankruptcy court has discretion to retain jurisdiction over matters within its § 1334(b) "related to" jurisdiction after dismissal, subject to the same considerations—economy, convenience, fairness, and comity—that the district courts apply when deciding whether to retain a supplemental state claim after federal claims have been dismissed. *Carraher v. Morgan Elec., Inc. (In re Carraher)*, 971 F.2d 327, 328 (9th Cir.1992); *Chapman v. Currie Motors, Inc.*, 65 F.3d 78, 81 (7th Cir.1995); *Davis*, 177 B.R. at 912.

### C

The structure of bankruptcy process, with its distinctions between the "case" and the various civil proceedings, reinforces our construction that § 1334(b) does not require that a closed case be reopened for exercise of subject-matter jurisdiction.

### 1

The image of an umbrella provides an apt metaphor for the "case" in the context of bankruptcy jurisdiction.

The umbrella does not exist until a bankruptcy case of some description—voluntary, joint voluntary, involuntary, or ancillary to foreign proceeding—is commenced. A case is commenced by the filing of a petition. 11 U.S.C. §§ 301, 302(a), 303(b) & 304(a).

The umbrella is sturdy because federal jurisdiction over the case is exclusive. 28 U.S.C. § 1334(a).

And the umbrella is expansive because commencement of a case invokes exclusive jurisdiction over all property of the bankruptcy estate and of the debtor at the time of the filing. 28 U.S.C. § 1334(e).

Once the umbrella comes into existence by virtue of the commencement of a case, the umbrella remains in existence. Sometimes the umbrella is open; sometimes it is closed; but, unless the case is dismissed, it is always present. And so long as it is present, there is § 1334(b) jurisdiction over disputes.

█ One reason its presence must, of necessity, linger is that the bankruptcy discharge is a permanent injunction. 11 U.S.C. § 524(a). Discharge enforcement issues and other matters commonly arise after the bankruptcy case itself becomes dormant. Many are susceptible of resolution without reviving the parent case.

### 2

Although the umbrella metaphor is a convenient oversimplification, lucidity demands precision about the differences between the bankruptcy itself (i.e. the

§ 1334(a) case) and civil proceedings within the bankruptcy.

### a

The "case" is the basis for taking control of all pertinent interests in property, dealing with that property, determining entitlements to distributions, the procedures for administering the mechanism, and discharging the debtor.

■■■■ The necessary muscle comes from several key provisions. There is exclusive federal jurisdiction over the bankruptcy case. 28 U.S.C. § 1334(a). In addition, there is exclusive federal jurisdiction over all property of the bankruptcy estate and over all property of the debtor as of the time of the filing of the bankruptcy case. 28 U.S.C. § 1334(e). The automatic stay enjoins infringement of that exclusive jurisdiction over property and prohibits various acts against the debtor. 11 U.S.C. § 362. The bankruptcy court can also expressly enjoin acts not otherwise barred by the automatic stay. 11 U.S.C. § 105(a); *Celotex*, 514 U.S. at 313, 115 S.Ct. 1493. Civil actions within bankruptcy jurisdiction may be removed from state courts. 28 U.S.C. § 1452. Finally, the debtor receives a discharge, eliminating personal liability and operating as a permanent injunction to enforce that elimination of liability. 11 U.S.C. § 524(a).

■■■■ The case is closed once the estate has been fully administered and the trustee discharged by the court from responsibilities in the case. 11 U.S.C. § 350(a); Fed.R.Bankr.P. 5009.

■■■■ After the case is closed, there is no trustee. On reopening, the court must decide whether to order that a trustee be appointed. Fed.R.Bankr.P. 5010.

### b

■■■■ Essentially all litigation within a bankruptcy case is a "civil proceeding" within § 1334(b) "arising under, arising in, or related to" jurisdiction, which jurisdiction is concurrent with state courts. 28 U.S.C. § 1334(b).

Although such jurisdiction is concurrent with state courts, the automatic stay renders state jurisdiction more theoretical than real until after the case is closed. 11 U.S.C. § 362.

As one would expect, the decisions construing § 1334(b) deal with how to draw the line at the outer fringe of "related to" matters. Most circuits agree that the test of "related to" jurisdiction is whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy. *E.g., Celotex*, 514 U.S. at 308–09 n. 6, 115 S.Ct. 1493; *Fietz*, 852 F.2d at 457; *Pacor*, 743 F.2d at 994.

■■■■ Although few decisions address the "arising under" and "arising in" aspects of § 1334(b), the House and Senate committee commentaries on the 1978 statute confirm the lack of ambiguity in 1334(b).[2] It is, and was meant to be, expansive and to encompass all contested matters, adversary proceedings, and what were formerly called plenary actions.[3]

2. These committee commentaries describe the jurisdiction provisions that were enacted as 28 U.S.C. § 1471(a) & (b) in 1978 and subsequently ruled unconstitutional for reasons related to the appointment and tenure of bankruptcy judges. *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). When the present court structure was adopted in 1984, the two subsections were reenacted verbatim as 28 U.S.C. § 1334(a) & (b). Since there is no change in language, the original legislative commentary retains vitality. *Wood v. Wood*

*(In re Wood)*, 825 F.2d 90, 92–93 (5th Cir. 1987); 1 COLLIER ON BANKRUPTCY ¶ 3.01[4][b] (Lawrence P. King ed., 15th ed. rev. 1999) ("COLLIER").

3. The following description appears in the House Report and the Senate Report:

The jurisdiction to be exercised by the bankruptcy courts is of all proceedings arising under title 11 or arising under or related to a case under title 11. The term "proceeding" is used instead of "matters and proceedings," the terminology currently

■ The phrase "arising under title 11" means, as noted, that the cause of action is created by title 11. *Eastport Assocs. v. City of Los Angeles (In re Eastport Assocs.)*, 935 F.2d 1071, 1076 (9th Cir.1991); *Wood*, 825 F.2d at 96; 1 COLLIER ¶ 3.01[4][c][i].

■ The phrase "arising in a case under title 11" means primarily those administrative proceedings that, while not based on any right created by title 11, nevertheless have no existence outside bankruptcy. *Eastport*, 935 F.2d at 1076; *Wood*, 825 F.2d at 97; 1 COLLIER ¶ 3.01[4][c][iv].

■ In short, virtually every act a bankruptcy judge is called upon to per-

used in the Bankruptcy Act and Rules. As used in this section, everything that occurs in a bankruptcy case is a proceeding. Thus, proceeding here is used in its broadest sense, and would encompass what are now called contested matters, adversary proceedings, and plenary actions under current bankruptcy law. It also includes any disputes related to administrative matters in a bankruptcy case.
H.Rep. No. 95–595, at 445 (1978), U.S.Code Cong. & Admin. News pp. 5963, 6400; S.Rep. No. 95–989, at 153 (1977), U.S.Code Cong. & Admin. News pp. 5787, 5939.
The House committee elaborated:
By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11. For example, a claim of exemptions under 11 U.S.C. [§ ] 522 would be cognizable by the bankruptcy court, as would a claim of discrimination in violation of 11 U.S.C. [§ ] 525. Any action by the trustee under an avoiding power would be a proceeding arising under title 11, because the trustee would be claiming based on a right given by one of the sections in subchapter III of chapter 5 of title 11. Many of these claims would also be claims arising under or related to a case under title 11. Indeed, because title 11, the bankruptcy code, only applies once a bankruptcy case is commenced, any proceeding arising under title 11 will be in some way "related to" a case under title 11. In sum, the combination of the three bases for jurisdiction, "arising under title 11," "arising under a case under title 11," or "related to a case under title 11," will leave no doubt as to the scope of the bankruptcy court's jurisdiction over disputes.

form in a judicial capacity is a "civil proceeding" within § 1334(b).

If virtually all judicial acts are taken in "civil proceedings" within the subject-matter jurisdiction of § 1334(b), then the existence of a "case" under § 1334(a) has less importance in bankruptcy litigation.

c

This brings us back to the "case" and to the puzzle of how § 1334(a) fits into the scheme, given our conclusion that the main source of subject-matter jurisdiction for judicial acts is § 1334(b).

The answer lies in the fact that the 1978 Bankruptcy Code was accompanied by a poison-pen letter against judicial participation in nonjudicial administrative tasks.[4]

. H.Rep. No. 95–595, at 445–46, (1977), U.S.Code Cong. & Admin. News (1978), pp. 5963, 6400–01.

4. Here is part of the poison-pen letter:

The Bankruptcy Commission found, and hearings before the Subcommittee on Civil and Constitutional Rights confirmed, that the most severe problem in the bankruptcy administration was the court system. The problem existed in two facets. First, [structure of court system was inadequate to enable effective operation.]

Second, the bankruptcy judge, because of the duties imposed upon him under the Bankruptcy Act, must take an active role in supervising and administering a bankruptcy case. No matter how fair a bankruptcy judge is, his statutory duties give him a certain bias in a case, and the bankruptcy court as a result has been viewed by many as an unfair forum. The bill removes many of the supervisory functions from the judge in the first instance, transfers most of them to the trustee and to the United States trustee, and involves the judge only when a dispute arises. Because the judge no longer will have to take an active role in managing bankruptcy cases, the bankruptcy court should become a forum that is fair in fact and in appearance as well.

Some of the supervisory functions removed from the judge will be transferred to a new system of United States trustees who will act as bankruptcy watchdogs, overseeing the qualifications and appointments of private trustees in bankruptcy cases, supervising their performance, monitoring their fees, and serving as trustees in cases where a private trustee cannot be found to serve.

■ The § 1334(a) "case" has two main functions. It provides for the existence, and the nonjudicial administration, of the estate under which the prime function is the performance of the duties of the trustee under the supervision of the U.S. trustee. Second, it serves as the administrative mechanism by which the debtor receives a discharge and a fresh start.

■ In other words, the bankruptcy "case" is an administrative exercise that occurs under the auspices of the court, but with a barrier—the difference between § 1334(a) and § 1334(b)—erected between the administrative and the judicial hemispheres.

i

The separation of administrative and judicial functions was a crucial reform, introduced in 1978 to eradicate the fundamental conflict between the judge's administrative and judicial duties under the Bankruptcy Act of 1898. 1 COLLIER ¶ 1.01[3].

This separation was implemented by providing for jurisdiction over the administrative aspects of the system in § 1334(a) and jurisdiction over the judicial aspects in § 1334(b). *Id.*

■ Thus, the purpose of an open "case" is to provide for bankruptcy administration by administrators, not by courts.

If there is no bankruptcy administration that is associated with a particular civil proceeding being considered by the court, then there is no reason in principle for the "case" to be open. *See* 3 COLLIER ¶ 350.03[4].

The authors of the *Collier* treatise put it this way in discussing discharge-related, post-closing events:

In these situations, which do not concern administration of the case, a motion to reopen may not be necessary for the court to render a decision; these issues clearly are within the court's jurisdiction under section 1334 of title 28. However,

H.Rep. No. 95–595, at 4, (1977), U.S.Code

many courts require that a motion to be [sic] reopen be filed, if only to provide a mechanism to instruct the clerk to retrieve a case filed from storage. If a motion to reopen is required in such circumstances, it should be granted as a matter of course; ...

3 COLLIER ¶ 350.03[4].

We conclude that the reopening associated with filing a discharge-related, post-closing adversary proceeding is not of jurisdictional significance. While there may be practical administrative reasons related to internal management by the clerk's office that warrant reopening, any such reopening is benign from the standpoint of jurisdiction.

ii

Rule 4007(b), which provides that a case may be reopened without fee to obtain a determination of the dischargeability of the debt, does not compel a different conclusion. Fed.R.Bankr.P. 4007(b).

That rule merely correlates with the observations in the 1978 legislative history to § 523(a) that "[p]roposed 11 U.S.C. [§ ] 350, providing for reopening of cases, provides one *possible* procedure for a determination of dischargeability and related issues after a case is closed." H.Rep. No. 95–595, at 363, (1977) U.S.Code Cong., & Admin. News (1978) at pp. 5963, 6319; S.Rep. No. 95–989, at 77, (1978), U.S.Code Cong. & Admin. News (1978), at pp. 5787, 5863 (emphasis supplied). The rule accommodates the "possibility."

■ The Federal Rules of Bankruptcy Procedure cannot abridge, enlarge, or modify any substantive right. 28 U.S.C. § 2075. It follows that Rule 4007(b) can neither expand nor contract the subject-matter jurisdiction conferred by 28 U.S.C. § 1334.

Thus, reopening under Rule 4007(b), while permissible and innocuous, is not a jurisdictional prerequisite to entertaining a dischargeability action under § 523(a). *In*

Cong. & Admin. News (1978), pp. 5963, 5965.

*re Higgins*, 161 B.R. 993, 995 n. 4 (Bankr. W.D.Mo.1993).

**3**

The difference between "closing" and "dismissing" a bankruptcy case buttresses our conclusion that reopening a closed case is not a jurisdictional prerequisite to subject-matter jurisdiction under § 1334(b).

**a**

A bankruptcy case is closed after the estate is fully administered and the court has discharged the case trustee. 11 U.S.C. § 350(a); Fed.R.Bankr.P. 5009.

The consequences of closing the case are limited. Some are specified by statute, others are inferential or have been recognized in case law.

**i**

The formal consequences of closing the case relate primarily to the status of property and to the ability to recover property for the estate.

■ Property that was scheduled under 11 U.S.C. § 521(1)—including both "property of the estate" and "property of the debtor as of the filing of the case"— and that is not otherwise administered during the case is abandoned to the debtor and deemed administered at the time of closing. 11 U.S.C. § 554(c).

■ Property of the estate that was not so scheduled and that is not administered retains its status as "property of the estate" after closing. 11 U.S.C. § 554(d).

■ The automatic stay terminates upon closing except with respect to property that retains its status as "property of the estate" after closing. 11 U.S.C. § 362(c). Such post-closing "property of the estate" presumably remains within the exclusive federal jurisdiction prescribed by 28 U.S.C. § 1334(e).

■ Closing also terminates many of the trustee's avoiding and recovery powers. 11 U.S.C. §§ 546(a), 549(d)(2) & 550(f)(2). And it terminates two of three statutory theories for revoking a discharge. 11 U.S.C. § 727(e)(2).

**ii**

The Bankruptcy Code contemplates that various activities may occur after closing. The fact that the estate has been fully administered merely means that all available property has been collected and all required payments made. Similarly, the completion of the trustee's work does not mean that everything has been done that may need to be done.

■ Closing the case does not affect the validity of the discharge injunction, of orders governing rights in property, or of orders governing the rights of parties in interest. They remain in effect and enforceable after closing.

Unscheduled property that retains its character as "property of the estate" may need to be administered. 11 U.S.C. § 554(d).

A discharge or confirmation may need to be revoked. 11 U.S.C. §§ 727(e)(1), 1144, & 1328(e).

The discharge status of various debts may, as in the instant appeal, need to be determined. 11 U.S.C. § 523(a)(1)–(18); Fed.R.Bankr.P. 4007(b) (14 of 18 grounds for nondischargeability have no time limit).

The Bankruptcy Code contemplates that all of these matters could survive the closing of the case. The legislative commentary confirms that this draftsmanship was intentional.[5]

---

5. The House committee explained:
   Very often, issues will arise after the case is closed, such as over the validity of a purported reaffirmation agreement, proposed 11 U.S.C. [§ ] 524(b), the existence of prohibited post-bankruptcy discrimination, proposed section 525, the validity of securi-

   ties issued under a reorganization plan, and so on. The bankruptcy court will be able to hear these proceedings because they arise under title 11.
   H.Rep. 95–595, at 445 (1977), U.S.Code Cong. & Admin. News (1978), at 5963, 6400.

#### b

By way of contrast, dismissing a bankruptcy case has different and more significant consequences than closing a case.

#### i

The principal statutory provision prescribing the effect of dismissal is 11 U.S.C. § 349.[6]

■ Unlike closing, avoided transfers are reinstated, certain voided liens revive, and all property of the estate revests in the entity in which such property was vested immediately before bankruptcy, regardless of whether the property was scheduled. *Id.*

■ Like closing, dismissal operates as a limitations period on trustee avoiding actions. 11 U.S.C. §§ 546(a)(2), 549(d)(2) & 550(f)(2). And the automatic stay against interests other than property of the estate terminates. 11 U.S.C. § 362(c)(2)(B).

#### ii

There is, nevertheless, a certain amount of residual jurisdiction that survives even dismissal.

As noted above, some causes of action survive automatically pursuant to § 1334(b) "arising under" jurisdiction, while others can be the subject of discretionary retention under the § 1334(b) "related to" jurisdiction.

■ And jurisdiction continues over related, post-closing motions, such as requests for sanctions and for relief under Civil Rule 60 under either § 1334(b) "arising in" or "related to" jurisdiction.

#### 4

■ The foregoing analysis leads us to conclude, and we now hold, that a closed bankruptcy case does not need to be reopened as a *jurisdictional* prerequisite to exercising § 1334(b) "arising under" subject-matter jurisdiction over a civil proceeding to determine whether a particular debt is excepted from discharge.

We further hold that, to the extent that Rule 4007(b) contemplates reopening without fee for the purpose of maintaining a nondischargeability action, such reopening is purely an *administrative* matter for ease of management by the clerk's office that is not of *jurisdictional* significance.[7] Fed.R.Bankr.P. 4007(b).

---

**6.** That section, which is entitled "Effect of dismissal", provides:

    (a) Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

    (b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—

      (1) reinstates—

      (A) any proceeding or custodianship superseded under section 543 of this title;

      (B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and

      (C) any lien voided under section 506(d) of this title;

      (2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and

      (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C. § 349.

**7.** This is the first time we have addressed this particular facet of the reopening puzzle. In prior decisions affirming reopening of cases we have always assumed, without deciding, that reopening is necessary. *E.g., Wilborn v. Gallagher (In re Wilborn)*, 205 B.R. 202, 206 (9th Cir. BAP 1996) (motion to reopen "constituted a preliminary step in the nondischargeability process"). It follows from our reasoning today that the inclusion in a reopening order of a deadline for filing an adversary proceeding merely constitutes a time after which the case could be administratively closed by the clerk and does not function as a limitations period.

We emphasize that our holding today is limited to nondischargeability actions. In such actions, the result has no impact upon the administration of the bankruptcy estate. Moreover, the trustee (who does not exist after closing and who could only be appointed in connection with reopening) is not a necessary party. Other categories of actions may require reopening.

The consequence of this holding, for purposes of this appeal, is that a reversal of the order reopening the case would be of no consequence to the bankruptcy court's judgment determining that the appellant's debt to the appellee is excepted from discharge. Since our inability to fashion effective relief makes the appeal moot, we lack jurisdiction.

II

The question of the debtor's standing to appeal an order reopening a case is intertwined with the nature and consequences of reopening a bankruptcy case.

A

We have repeatedly held that the reopening of a closed bankruptcy case is a ministerial act that functions primarily to enable the file to be managed by the clerk as an active matter and that, by itself, lacks independent legal significance and determines nothing with respect to the merits of the case. E.g., DeVore v. Marshack (In re DeVore), 223 B.R. 193, 198 (9th Cir. BAP 1998); Abbott v. Daff (In re Abbott), 183 B.R. 198, 200 (9th Cir. BAP 1995); United States v. Germaine (In re Germaine), 152 B.R. 619, 624 (9th Cir. BAP 1993).

In view of persistent confusion about the effect and necessity of reopening, it is appropriate to explain our reasoning.

1

Reopening, in and of itself, has little impact upon the estate and upon jurisdiction in light of what occurs as a result of closing the case. To the extent that effects of closing are to be undone, specific orders in separate civil proceedings are necessary.

a

Upon the prior closing of the case, a number of consequences ensued, most of which relate to the status of property and to the ability to recover property for the estate.

■ Property that was scheduled under 11 U.S.C. § 521(1), including both "property of the estate" and "property of the debtor as of the filing of the case," and that is not otherwise administered during the case is abandoned to the debtor and deemed administered at the time of closing unless the court specifically retains jurisdiction. 11 U.S.C. § 554(c). This is sometimes called a "technical abandonment." Helms v. Arboleda (In re Arboleda), 224 B.R. 640, 645 (Bankr.N.D.Ill.1998).

Correlatively, "property of the estate" that was not scheduled and that is not administered retains its status as "property of the estate" after closing. 11 U.S.C. § 554(d); Arboleda, 224 B.R. at 645.

The automatic stay terminates upon closing except with respect to property that retains its status as "property of the estate" after closing. 11 U.S.C. § 362(c). Such post-closing "property of the estate" presumably remains within the exclusive federal jurisdiction prescribed by 28 U.S.C. § 1334(e).

Closing also terminates many of the trustee's avoiding and recovery powers. 11 U.S.C. §§ 546(a), 549(d)(2) & 550(f)(2).

It terminates two of the three statutory theories for revoking a chapter 7 discharge. 11 U.S.C. § 727(e)(2).

■ And it terminates the services of the trustee. 11 U.S.C. § 350(a).

b

■ Reopening the case does not undo any of the statutory consequences of closing. Hence, little happens that would give

anyone standing to complain about reopening.

■ Property that was technically abandoned under § 554(c) is not automatically reeled back in by virtue of reopening. *Woods v. Kenan (In re Woods),* 173 F.3d 770, 777 (10th Cir.1999); *DeVore,* 223 B.R. at 199. *Contra, Compass Bank for Sav. v. Billingham (In re Graves),* 212 B.R. 692, 695–96 (1st Cir. BAP 1997).

■ Revoking a technical abandonment requires more than a mere exercise of the § 350(b) reopening power. One alternative is to finesse the reopening issue by employing Civil Rule 60(b) as a tool to vacate the order closing a case. *Woods,* 173 F.3d at 780–81 (Fed.R.Civ.P.60(b)).

■ Likewise, to the extent that the automatic stay expired in conjunction with closing, it does not automatically spring back into effect. If protection is warranted after a case is reopened, then an injunction would need to be imposed.

■ Nor is the trustee automatically reinstated upon reopening. If the services of a trustee are needed in the reopened case, then the court needs to order that a trustee be appointed. Fed.R.Bankr.P. 5010.

■ The rules do not require that creditors be given notice of the reopening of the case. And the clerks do not give such notice unless the court so orders. Bankruptcy Clerk's Manual, Administrative Office of U.S. Courts § 15.03b.

■ In short, mere reopening has no impact on property of the debtor, no impact on property of the estate that was abandoned at the time of closing, and does not automatically reinstate the trustee. It follows that an improvident reopening is largely victimless error.

### 2

Although the reopening procedure prescribed by Rule 5010 requires a motion, it does not require that notice be given to anyone. Fed.R.Bankr.P. 5010. Nor does § 350(b) contain the talismanic mention of notice and hearing that connotes the statutory need to permit a contest.

■ It follows that the motion can be considered ex parte and without a hearing. *Watson v. Shandell (In re Watson),* 192 B.R. 739, 744 (9th Cir. BAP 1996), *aff'd mem.,* 116 F.3d 488, 1997 WL 330895 (9th Cir.1997); *Abbott,* 183 B.R. at 200; *First Am. Title Co. v. Daniels (In re Daniels),* 34 B.R. 782, 784 (9th Cir. BAP 1983); 7 Collier ¶ 5010.02[5].

### a

Ex parte resolution of the reopening motion is consistent with practice under the former Bankruptcy Act, under which the request to reopen was made by application that could be entertained ex parte and without notice. *In re Schreiber,* 23 F.2d 428, 430 (2d Cir.1928), *cert. denied,* 277 U.S. 593, 48 S.Ct. 529, 72 L.Ed. 1005; *In re Zimmer,* 63 F.Supp. 488, 489 (S.D.Cal.1945); *In re Dixon,* 49 F.Supp. 977, 977–78 (S.D.Ga.1943); 1 James Wm. Moore, Collier on Bankruptcy ¶ 2.51 (Lawrence P. King ed., 14th ed.1974).

If anything, the bankruptcy court's discretion under the 1978 Bankruptcy Code is subject to fewer constraints than under the former Bankruptcy Act due to the modern shift away from *in rem* as the jurisdictional paradigm.[8]

---

**8.** The jurisdictional shift in 1978 was distinct and intentional. The legislative history of 28 U.S.C. § 1334(a) and § 1334(b) (which were originally enacted as 28 U.S.C. § 1471(a)–(b) and then redesignated and reenacted in 1984 without change) is explicit. The Senate and House committees each said that "[t]he idea of possession and consent as bases for jurisdiction is eliminated" and that the bankruptcy court "will exercise in personam jurisdiction as well as in rem jurisdiction in order that they may handle everything that arises in a bankruptcy case." S.Rep. No. 95–989, at 153 (1978), U.S.Code Cong. & Admin. News (1978), p.5787, 5939; H.Rep. No. 95–595, at 445 (1977), U.S.Code Cong. & Admin. News (1978), p. 5963, 6400.

b

■ It is settled that the decision on a motion to reopen calls for an exercise of discretion that is reviewed for an abuse of discretion. *E.g., Elias,* 188 F.3d at 1161; *Cisneros,* 994 F.2d at 1466–67; *Woods,* 173 F.3d at 778; *In re Bianucci,* 4 F.3d 526, 528 (7th Cir.1993).

That is the standard that we would apply here, if we could find an appellant with standing.

c

Our analysis exposes a shortcoming in Rule 5010, which invites confusion, misfocused appeals to the district courts and bankruptcy appellate panels, an d unnecessary appeals to the courts of appeals.

i

Although the motion to reopen can be considered ex parte and without notice, the rule does not say so. Reaching the correct conclusion requires a trek through the rules maze and attention to the implications of the absence in 11 U.S.C. § 350(b) of mention of notice and hearing.

■ Moreover, the characterization of reopening procedure as a motion, rather than application, coupled with the absence of express reference to ex parte consideration, invites a misconstruction of Rule 9013 [9] that suggests a motion to reopen is fair game for a "contested matter" under Rule 9014. Fed.R.Bankr.P. 9013–14. It is not.

---

We do not, however, suggest that *in rem* jurisdiction is no longer important. Rather, we suggest that there are interpretive implications associated with maturation in the understanding of bankruptcy jurisdiction. *See, e.g.,* Brubaker, *One Hundred Years of Federal Bankruptcy Law and Still Clinging to an In rem Model of Bankruptcy Jurisdiction,* 15 BANKR.DEV.J. 261 (1999).

9. Rule 9013 provides:
   A request for an order, *except when an application is authorized* by these rules, shall be by written motion, unless made during a

ii

Since Rule 5010 calls for a motion (instead of an application) and does not specify that it can be considered ex parte, courts and litigants instinctively presume that it is a motion that is capable of being contested. This encourages parties to bootstrap issues from the underlying dispute into the motion to reopen, which typically begins with the prospective adversary proceeding defendant arguing that there is a good defense that will cause the plaintiff to lose.

iii

But permitting extraneous issues to intrude into the reopening creates a variety of problems.

The mischief begins when the motion is used as the basis for an ersatz preliminary hearing of doubtful procedural validity, inappropriately circumventing Civil Rules 12 and 56. Fed.R.Civ.P. 12 & 56, *incorporated by* Fed.R.Bankr.P. 7012 & 7056.

Moreover, the encroachment creates confusion about what issues are to be decided by the trial court. Since the merits of the underlying dispute are, by definition, not necessary to determine the question of reopening, it is doubtful that the court's pronouncement regarding the merits would be binding in the underlying litigation or in a nonbankruptcy court.

The trouble continues on appeal with a confusion of issues. Properly construed, a bankruptcy court's refusal to reopen a case on the premise that a state court is competent to hear the matter is, in reality, an abstention under 28 U.S.C. § 1334(c).

---

hearing. The motion shall state with particularity the grounds therefor, and shall set forth the relief or order sought. Every written motion *other than one which may be considered ex parte* shall be served by the moving party on the trustee or debtor in possession and on those entities specified by these rules or, if service is not required or the entities to be served are not specified by these rules, the moving party shall serve the entities the court directs.
Fed.R.Bankr.P. 9013 (emphasis supplied).

Conversely, a jurisdictionally unnecessary reopening for the purpose of entertaining an adversary proceeding is tantamount to a refusal to abstain.

In the typical appeal, the parties are oblivious to 28 U.S.C. § 1334(c) and wind up misleading the appellate court about the pertinent issues.

The problem is compounded when a mislabeled reopening decision is appealed to the court of appeals. If it is actually an abstention decision, then the court of appeals has no jurisdiction. 28 U.S.C. § 1334(d); *cf. Things Remembered,* 516 U.S. at 128–29, 116 S.Ct. 494. In which event, the parties and the courts of appeals are saddled with the burden of unnecessary appeals.

### iv

Consider the instant appeal. The debtor's opposition to reopening asserted that he had adequately scheduled the moving creditors and that he should not bear the risk of obsolete addresses. When the bankruptcy court sided with the creditors, ruling that they could file an adversary proceeding premised on 11 U.S.C. § 523(a)(3)(B), it was indirectly ruling on one of the essential elements of that cause of action. *Franklin,* 179 B.R. at 923–24. And, indeed, it is that very aspect of the ruling element that the debtor is using to try to persuade us to reverse the order reopening the case.

Thus, if the debtor had appealed the adversary proceeding judgment, *instead of* the order reopening the case, we would now be wrestling with the effect on the adversary proceeding of the bankruptcy court's ruling that the debt was unscheduled for purposes of § 523(a)(3)(B)—it appearing that the parties treated the ruling as decisive of that essential element of the cause of action and did not litigate it further. Conversely, had the court denied the motion to reopen on the theory that the debt had been adequately scheduled, arguably the creditors still could have taken their § 523(a)(3)(B) action to state court.

### v

It may be objected that considerations of economy make it sensible to combine consideration of the motion to reopen with consideration of arguably dispositive issues in the underlying litigation. The logical appeal in this position turns out, in the long run, to be a false economy. Well-intentioned shortcuts that give short shrift to orderly procedure create unfortunate misimpressions about the quality of justice dispensed in bankruptcy courts, look sloppy, and lead one into disorienting thickets that present more trouble than they avoid.

The better practice is the procedurally correct one of requiring merits issues to be left to the underlying litigation and relying on Rule 9011 and the court's inherent sanctioning authority to constrain inappropriate litigation. Fed.R.Bankr.P. 9011; *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.),* 77 F.3d 278 (9th Cir.1996).

### vi

While it is tempting to say that the reopening motion entitles the court to perform a gatekeeping function that justifies inquiring into the related relief that will be sought, such inquiry invites the very confusion that we seek to dispel.

█ The correct way to close the gate if the bankruptcy court believes that the underlying dispute should be relegated to state court is to abstain under 28 U.S.C. § 1334(c). *Cf. Elias,* 188 F.3d at 1162 (affirming determination to leave fees to state court as proper exercise of discretion without considering 28 U.S.C. § 1334(c)). At a minimum, the time consumed by appellate review would be reduced by the operation of 28 U.S.C. § 1334(d).

█ In short, the motion to reopen legitimately presents only a narrow range of issues: whether further administration appears to be warranted; whether a trustee should be appointed; and whether the

circumstances of reopening necessitate payment of another filing fee. Extraneous issues should be excluded.

## B

With this appreciation of the limited effect of reopening the case, we can now assess the debtor's standing to appeal the order reopening the case.

### 1

■ Appellate standing in bankruptcy is determined under the so-called "persons aggrieved" test that has been carried over from the former Bankruptcy Act. Only one who is directly and adversely affected pecuniarily has standing to appeal a bankruptcy court's order. *Everex Sys., Inc. v. Cadtrak Corp. (In re CFLC, Inc.)*, 89 F.3d 673, 675 (9th Cir.1996); *Brady v. Andrew (In re Commercial W. Fin. Corp.)*, 761 F.2d 1329, 1334 (9th Cir.1985); *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442–43 (9th Cir.1983).

■ Thus, the question is whether the order reopening the case for the purpose of entertaining a creditor's nondischargeability action directly and adversely affects the debtor in a pecuniary manner.

### 2

The debtor's interest in the order reopening the case is the interest of a prospective defendant in an adversary proceeding to determine whether his debt to appellees was or was not discharged.

■ A potential defendant in an adversary proceeding is not a "person aggrieved" for purposes of bankruptcy appellate standing because every cognizable defense in the underlying dispute will be available in the ensuing adversary proceeding. *Fondiller*, 707 F.2d at 443; *McColgan v. Clark (In re Snyder)*, 4 F.2d 627, 628 (9th Cir.1925); *Abbott*, 183 B.R. at 200; *accord, Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737 (3d Cir.1995); *In re El San Juan Hotel*, 809 F.2d 151, 155 (1st Cir.1987).

### 3

We are mindful that the "person aggrieved" test makes it difficult to locate a party with standing to appeal an order reopening a case. The logical consequence is that orders reopening cases may commonly escape review. Properly so; whenever nobody is harmed enough to have standing, then there is no utility to an appeal.

■ While the old "trivial order" doctrine under the former Bankruptcy Act was ultimately subsumed by the finality requirement, this is an occasion to honor its memory. 16 Charles Alan Wright et al., Federal Practice & Procedure: Jurisdiction 2d § 3926 (2d ed. 1996) (Trivial Order doctrine). The order reopening a case is ordinarily too trivial to warrant appellate review.

Reopening the case, even though not necessary for bankruptcy jurisdiction over the post-closing dischargeability adversary proceeding, was benign. It may even have been appropriate for administrative reasons related to the internal management of the bankruptcy court.

### 4

Application of the "person aggrieved" test to the facts of this appeal compels the conclusion that the debtor lacks standing to appeal the order reopening the case. We so hold.

### *Conclusion*

We must dismiss this appeal for lack of jurisdiction on two adequate, independent grounds. The appeal is moot because we could not fashion any effective relief in the event of reversal: the order reopening the case was in the nature of administrative bookkeeping and had no effect on the bankruptcy court's § 1334(b) jurisdiction over the underlying adversary proceeding seeking to have a debt determined to be excepted from discharge. Moreover, the appellant lacks standing to appeal.

RYAN, Bankruptcy Judge, concurring:

918

I agree with the majority that there is no jurisdictional requirement that a closed bankruptcy case be reopened before § 1334(b) "arising under" jurisdiction can be exercised. Because the debtor failed to appeal the nondischargeability judgment, the appeal is moot because we are unable to fashion effective relief. Similarly, the debtor's failure to appeal the nondischargeability judgment leaves him without standing to appeal the reopening because he is not pecuniarily affected by the granting of the motion to reopen. Therefore, I concur in the result.

However, I disagree with the majority's approach to § 350(b) because it renders that section superfluous, *see Kawaauhau v. Geiger,* 523 U.S. 57, 62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (stating that " 'we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law' ") (citation omitted), but would leave resolution of this issue for another day because it is not necessary to reach our decision.