In re **DUNNING BROTHERS COMPANY, Bankrupt.**

Bk. No. 36–26824–C.

United States Bankruptcy Court, E.D. California.

Sept. 4, 2009.

---

Jason E. Rios, Esq., Felderstein, Fitzgerald, Willoughby & Pascuzzi, Sacramento, CA, for Applicant to Reopen.

## OPINION

KLEIN, Bankruptcy Judge:

This 1936 case illustrates the potency of the doctrine that unscheduled property remains "property of the estate" after a bankruptcy case is closed—even seven decades later. That was settled law when this case commenced under the Bankruptcy Act of 1898 and remains the law today under Bankruptcy Code § 554(d). The case is so old that it cannot even be described as having been filed under former Bankruptcy Act chapter VII; there were no chapters before the Chandler Act was enacted in 1938.

The occasion for reopening after 73 years is the need to clear the cloud on title lingering over a fee interest in real estate that the debtor did not schedule. The specific property interest did not come to light when the case was open in 1936–37 and reopened in 1941–42. Reopening it

now will enable a trustee to administer the property and convey clear title.

The antiquity of the case warrants a review of this court's jurisdiction, of the basis for reopening, and of procedures applicable under the former Bankruptcy Act, which continues to govern cases filed under it.

### Facts

Dunning Brothers Company, a corporation describing itself as "Garage and Hotel Owner" in Marysville, California, filed a voluntary petition in bankruptcy on April 27, 1936, as case no. 6824 in the United States District Court for the Northern (now Eastern) District of California. United States District Judge Michael J. Roche adjudicated the debtor a bankrupt on April 28, 1936, and referred the case to Referee in Bankruptcy Richard Belcher. The creditors selected Wellington H. Sneed as trustee.

The debtor entered "NONE" on Schedule B–1 "Real Estate" and "NONE" as "Interest in Land" on Schedule B–4, "Property in Reversion, Remainder or Expectancy, Including Property Held in Trust for the Debtor or Subject to Any Power or Right to Dispose of or to Charge." Neither statement was accurate.

In 1924, Dunning Brothers platted "Dunning Subdivision" in Yuba County, California, and in 1933 encumbered its remaining ownership interest in all but three subdivision parcels, and a fourth adjacent parcel, by deed of trust in favor of Capital National Bank of Sacramento. The encumbered parcels were transferred to the bank in lieu of foreclosure before bankruptcy.

Three estate appraisers appointed pursuant to Bankruptcy Act § 70f, 11 U.S.C. § 110(f) (1934), examined the prepetition transfers in lieu of foreclosure and recom-

mended the trustee take no action to recover and administer the transferred parcels as their value approximated the amount of the debt to the bank.

Case administration proceeded on the assumption that the estate had no interest in real property. Dunning Brothers was discharged. Dividends were paid. It appearing that the estate was fully administered, the case was closed in August 1937.

The case was reopened July 28, 1941, at the request of the City of Sacramento, to administer an unscheduled Dunning Brothers parcel that the city acquired in a Sacramento County tax sale on July 8, 1941. The case was re-referred to Referee Belcher. Mr. Sneed was restored as trustee. Only one appraiser was required to be appointed due to a 1938 amendment to Bankruptcy Act § 70f.

In addition to the Sacramento parcel, the trustee discovered one unscheduled Dunning Subdivision parcel, which he sold to a school district in a court-approved transaction. The case was closed for the second time in June 1942.

The three heretofore unknown and unscheduled Dunning parcels comprise the fee interest under a railroad that is on the top of a Yuba River levee. Easements burdening those parcels for railroad right of way purposes were recorded September 6 and 7, 1926, and remain in effect. The property appears to be taxed as railroad property.

The desire of the railroad easement owner to own the fee under the right of way and levee triggered this second case reopening. That entity has been acquiring the fee interest under the length of the railroad from landowners. Upon noting the clouded title to the three Dunning parcels, it had the original case file retrieved from the National Archives and pursued reopening the case to clear the cloud title. In order to have the rights of a creditor, it purchased the unpaid claim of Pacific Gas & Electric Company.

Two post-bankruptcy easements also purportedly burden the three subject parcels. A highway easement was recorded February 21, 1944. An easement for construction, re-construction, maintenance and use of a levee was recorded May 13, 1963.

This court presided over a meeting of creditors, as required by Bankruptcy Act § 55b, 11 U.S.C. § 91(b), on August 5, 2009. The court accepted the recommendation of the creditor appearing at the meeting and appointed Hank Spacone as trustee.

### Jurisdiction

Jurisdiction, to be addressed in more depth, is founded on 28 U.S.C. § 1334(a) and Bankruptcy Act § 2, 11 U.S.C. § 11 (repealed 1979, subject to savings clause). The bankruptcy court of this district is the "court of bankruptcy" with jurisdiction over this case by virtue of the standing reference in this district from the district court to the bankruptcy court. *Id.;* Gen. Order 182, U.S. Dist. Ct., E.D. Cal. (July 27, 1984).

### Discussion

After a review of how one determines what are the applicable Bankruptcy Act provisions, the focus shifts to scrutinizing jurisdiction, the question of reopening the case, and other procedural considerations.

### I

Practice under the Bankruptcy Act has receded so far into the mists of time that it is useful to note the sources to be consulted in order to ascertain the pertinent law and rules of practice. The next Bankruptcy Act case that is reopened is less likely to be assigned to someone who can claim

to have done any lawyering under the Bankruptcy Act.

Applying the former Bankruptcy Act can be counterintuitive to legal minds schooled in a culture that assigns primacy to the "plain meaning" of a statute. The Bankruptcy Act was subjected to numerous judicial glosses devised over the decades as obsolescence set in.[1] Then, in 1973, new Bankruptcy Rules trumped the nonsubstantive provisions of the Bankruptcy Act. Order Adopting Bankruptcy Rules, 411 U.S. 991 (1973); 28 U.S.C. § 2075 (1964) ("All laws in conflict with such [bankruptcy] rules shall be of no further force or effect after such rules have taken effect."[2]). As the Bankruptcy Act was as much procedural as substantive, the Bankruptcy Rules wrought substantial changes.

As to any given question, then, one must read the statute, study the glosses, read the Bankruptcy Rules if the question is in any way procedural, and consult the commentaries.

Two examples of the problem have already cropped up in this case. Bankruptcy Act § 44a provides that the creditors "shall, at the first meeting of creditors after . . . an estate is reopened, appoint a trustee or three trustees." Bankruptcy Act § 44a, 11 U.S.C. § 72(a) (repealed 1979). But Bankruptcy Rule 209(b) specifies that the court "shall appoint a trustee if . . . (4) a trustee is needed in a reopened case." BANKR.R. 209(b) (1973). Since Rule 209(b) supersedes the statute, the creditor's vote at the meeting of creditors to appoint Mr. Spacone as trustee constituted, as a matter of law, a recommendation that the court appoint him. The court accepted the recommendation.[3]

The second example of the problem is still before the court. The final version of Bankruptcy Act § 70f, 11 U.S.C. § 110(f) (repealed 1979), provided that the "court shall appoint a competent and disinterested appraiser" (three appraisers before 1938), but Bankruptcy Rule 606 superseded § 70f; it provides that the "court shall appoint one or more competent and disinterested appraisers, unless it determines that such appointment is unnecessary." Whether the appointment is "unnecessary" is an open question in this case.

The indispensable guide through the thicket of Bankruptcy Act, glosses, and rules is the Collier treatise's 14th edition. JAMES WM. MOORE, LAWRENCE P. KING ET AL., COLLIER ON BANKRUPTCY (14th ed.1978) ("COLLIER 14th ed."). Its analysis and extensive case citations document the odysseys of various bankruptcy concepts and procedures over eighty years.

Finally, invaluable insights about the Bankruptcy Act, particularly in compari-

---

1. As one example of the statute increasingly losing step with the times, the Bankruptcy Act defined "persons" to include "corporations, except where otherwise specified, and officers, partnerships, and *women* . . . ." Bankruptcy Act § 1, 11 U.S.C. § 1 (repealed 1979) (emphasis added).

2. This sentence in the original version of 28 U.S.C. § 2075 permitting bankruptcy rules to supersede statutes mirrors the general Rules Enabling Act's supersession clause, 28 U.S.C. § 2072(b), but was deleted from § 2075 in 1979. Bankruptcy Reform Act of 1978, Pub.L. 95–598, § 247, 92 Stat. 2549, 2672 (1978) (effective Oct. 1, 1979). Thus, since 1979, there has been asymmetry in the Federal Rules process. The Federal Rules of Civil, Criminal, and Appellate Procedure can adjust a procedural aspect of a federal statute so long as a revision does "not abridge, enlarge or modify any substantive right," 28 U.S.C. § 2072(b); the Federal Rules of Bankruptcy Procedure cannot.

3. The United States trustee, who has no jurisdiction over Bankruptcy Act cases and did not befriend the court in this case, has appointed Mr. Spacone as trustee in Bankruptcy Code cases.

son to and contrast with the Bankruptcy Code, are to be found in Professor Klee's book on the bankruptcy jurisprudence of the Supreme Court. KENNETH N. KLEE, BANKRUPTCY AND THE SUPREME COURT (2008).

## II

Resolving the threshold question of this court's jurisdiction over the 1936 case requires review of some history.

Jurisdiction over bankruptcy cases under the Bankruptcy Act of 1898 reposed in the United States District Courts, as "courts of bankruptcy" vested "with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in [bankruptcy] proceedings" according to a list set forth in the statute. Bankruptcy Act § 2; 11 U.S.C. § 11 (1934, repealed 1979). The district courts exercised "jurisdiction of all controversies at law and in equity, as distinguished from proceedings under this Act, between receivers and trustees as such and adverse claimants, concerning the property acquired or claimed by the receivers or trustees." Bankruptcy Act § 23a, 11 U.S.C. § 46 (repealed 1979); see generally Klee, at 200–220.

The district courts were authorized to refer bankruptcy matters to Referees in Bankruptcy, who could exercise the summary portion of the district court's jurisdiction. The Referees were re-designated as Bankruptcy Judges in 1973 by virtue of former Bankruptcy Rule 901(7). Bankr.R. 901(7) (1973).

The Judicial Code, from its enactment into positive law in 1948 until its amendment in 1978, provided: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of all matters and proceedings in bankruptcy." 28 U.S.C. § 1334 (repealed 1979).

The Bankruptcy Reform Act of 1978, which enacted the present Bankruptcy Code, conferred subject-matter jurisdiction over title 11 cases on the district courts but provided for that jurisdiction to be exercised by an independent bankruptcy court to be instituted in 1984. 28 U.S.C. § 1471(a)-(c).[4]

The Supreme Court, however, upended the new court provisions when it found the new bankruptcy courts to be unconstitutional because bankruptcy judges would exercise more jurisdiction than permissible for judges without life tenure. N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

In response to Northern Pipeline, Congress re-engineered the jurisdictional scheme to make bankruptcy courts "units", of the district court, instead of separate courts, and to designate bankruptcy judges as "judicial officers of the district court." Under the Bankruptcy Amendments and Federal Judgeship Act of 1984, federal subject-matter jurisdiction remained with the district courts and was to be allocated as between district and bankruptcy judges by orders of reference from the district

---

4. The relevant portion of Judicial Code § 1471 provided:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.

(c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

28 U.S.C. § 1471 (repealed 1984).

court. 28 U.S.C. §§ 151–58 & 1334, *enacted by* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. 98–353, §§ 101 & 104, 98 Stat. 333, 333–42 (1978); Klee, at 213–15.

■ What matters for present purposes is that cases under the former Bankruptcy Act are not subject to the Bankruptcy Code. All cases commenced under the Bankruptcy Act (save some railroad reorganizations) and matters and proceedings in or related to such cases are to be conducted and determined as if the Bankruptcy Reform Act of 1978 "had not been enacted."[5] *Stein v. United Artists Corp.,* 691 F.2d 885, 888 n. 1 (9th Cir.1982). Thus, the Bankruptcy Act and, to the maximum extent feasible, the former Bankruptcy Rules apply in this reopened case.

Following enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984, and concomitant repeal of the transition provision, federal subject-matter jurisdiction over bankruptcy cases and proceedings remained in the district court by virtue of a revised 28 U.S.C. § 1334. Bankruptcy judges could hear matters referred to them by the district court. 28 U.S.C. § 157(a)-(c).

■ Of particular relevance to this case, the District Court for the Eastern District of California referred all Bankruptcy Act cases to the bankruptcy judges of the district:

1.02 *Cases and Proceedings Under the Bankruptcy Act of 1898.* The bankruptcy judges of this district shall hear and determine cases and proceedings arising under the Bankruptcy Act of 1898, as amended, pursuant to sec. 403(a) of the Bankruptcy Reform Act of 1978.

Gen. Order 182, U.S. Dist. Ct., E.D. Cal. (July 27, 1984, ratified Oct. 22, 1987). This standing order of reference remains in force.

In other words, the United States District Court for the Eastern District of California is the relevant "court of bankruptcy" with cognizance over this case within the meaning of Bankruptcy Act § 6. As the district court has designated the bankruptcy judges of the district to hear and determine Bankruptcy Act cases, a bankruptcy judge is the appropriate "judicial officer of the district court" to reopen the case and conduct proceedings therein.

Indeed, the requirement in Bankruptcy Reform Act of 1978 § 403(a) that the Bankruptcy Act be applied to this case "as if the [Bankruptcy Reform] Act had not been enacted" fits neatly into the current structure.

Former Bankruptcy Rule 515 requires that, when the application to reopen is filed with the clerk of the district court having custody of the papers, the "case shall be referred forthwith for action on the application and for further proceedings therein." BANKR.R. 515 (1973).[6] This

---

**5.** Section 403(a) of the 1978 statute provided:
(a) A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this [978 Bankruptcy Reform] Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter, or proceeding ·shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted.

(b) [Railroad reorganization exception omitted].
Bankruptcy Reform Act of 1978, Pub.L. 95–598, § 403(a), 92 Stat 2549, 2683 (1978).

**6.** The Advisory Committee's Note explained, in relevant part:
An application under this rule is not subject to the one-year limitation of Rule 60(b) of the Federal Rules of Civil Procedure, which generally applies to motions for relief from an order of the court. See Rule 924.

"court of bankruptcy" may accept the automatic reference contemplated by the rule. The update needed is that the motion, which is a subspecies of "application," [7] is filed with the clerk of the bankruptcy court having custody of the papers.

■ The final jurisdictional query is whether this court's authority is affected by a 1986 requirement that the district court withdraw each reference of a Bankruptcy Act case "still pending," determine the status of each such case, and re-refer it to the bankruptcy judge with instructions regarding timely disposition. 28 U.S.C. § 581 note.[8]

That special review, however, was a one-time event to be done within one year after

The provision for automatic reference is new. *Cf. In re Lowerree*, 157 F.2d 831, 834 (2d Cir.1946). It is consonant with the policy of the rules to eliminate unnecessary paperwork and involvement of the district judge in bankruptcy cases otherwise than as provided in Rule 102. *Cf.* Rule 217(b). The fees, if any, to be charged for reopening cases are prescribed by the Judicial Conference pursuant to § 40c of the Act.
BANKR.R. 515 (Advisory Committee's Note) (1973).

7. The meaning and import of "application" is poorly understood, even though the concept is carried forward into Federal Rule of Bankruptcy Procedure 9013. Former Rule 901(4) defines "application" to include "motion:"

(4) "Application" includes any request to the court for relief that is not a pleading or proof of claim. An application not made in open court shall be in writing unless a writing is excused by the court. An application for an order against another party may be required to be made by motion.
BANKR.R. 901(4) (1973).

The Advisory Committee also explained the role of an application. Unlike the Bankruptcy Code, the Bankruptcy Act obliged judges to engage in nitty-gritty matters of case administration that were presented by applications to do things often more administrative than judicial in nature. Although applications survive in Bankruptcy Code practice, they have receded further into the background:

(4). Many proceedings in a bankruptcy case are purely administrative, involving no adverse parties and requiring none of the formalities and safeguards of notice and hearing characteristic of civil litigation. When the bankrupt or trustee or other party seeks an order involving no adverse party, he will ordinarily need only to file an "application" conforming to the definition in this rule. See, *e.g.*, Rules 515 (application to reopen a case) and 606(b)(2) (application for private sale). Special requirements may apply to particular applications. See, *e.g.*, Rules 107(b)(1) (application for permission to pay filing fees in installments), 201(b) (application for receiver), and 219(a) (application for compensation or reimbursement or expenses). On occasion an application may be contested, and in such case the court may require the applicant to conform his request to a motion or pleading. See Rule 914. The definition of "application" conforms generally to usage in the Act and under the General Orders and Official Forms. See, *e.g.*, §§ 2a(3) and 69a (application for receivers), 10a and 21a (application for an examination)[,] 57n (application for extension for filing claim), and 58a(8) (application for compensation) of the Act. The application for discharge referred to in §§ 7a(1) and 14 of the Act and in Official Form No. 41, and the application for amendments to the petition and schedules referred to in General Order 11 have been eliminated as unnecessary formalities.
BANKR.R. 901(4) (Advisory Committee's Note) (1973).

8. The 1986 provision is:

At the end of one calendar year following the date the amendments made by subtitle A of title II of this Act take effect in a district in which any case is still pending under the Bankruptcy Act, the district court shall withdraw the reference of any such case and, after notice and. a hearing, determine the status of the case. Such case shall be remanded to the bankruptcy judge with such instructions as are necessary for the prompt closing of the case and with a requirement that a progress report on the case be provided by the bankruptcy judge after such interval as the district court deems appropriate.
Pub.L. 99–554, § 311 (Oct. 27, 1986), 28 U.S.C. § 581 note.

the United States trustee program became effective in each district. The instructions from the district court related only to Bankruptcy Act cases "still pending," which meant "then open," at the time of the review, which was complete in this district by 1990. As the instruction requirement did not apply to Bankruptcy Act cases that were closed at the time of the review and later reopened, there is no need to ask the district court for instructions.

That 1986 requirement that the district court re-refer the cases to the bankruptcy court after withdrawing references and issuing instructions also confirms that Congress expected Bankruptcy Act cases to be referred to bankruptcy courts.

The standing referral of Bankruptcy Act cases to bankruptcy judges of this district remains in effect. Hence, a bankruptcy judge may hear and determine this case. 28 U.S.C. § 157(b)(2).

### III

The question whether this case qualifies for reopening under the Bankruptcy Act subdivides into the standard to be applied and the specific factual basis for reopening, which entails a review of the rule regarding unscheduled assets.

### A

■ The reopening provision that applies to this case focuses on whether there is "cause" to reopen. 1 COLLIER 14th ed. ¶ 2.49.

The "cause" standard was introduced by the Chandler Act in 1938. Courts of bankruptcy are authorized to "reopen estates for cause shown." Bankruptcy Act § 2a(8), 11 U.S.C. § 11(a)(8), *as amended by* Act of June 22, 1938, § 1, 52 Stat. 847 ("Chandler Act"). This was the standard that was applied when the case was reopened in 1941.

The meaning of "cause" is informed by contrasting the Chandler Act version with its predecessor that authorized courts of bankruptcy to "reopen [estates] whenever it appears they were closed before being fully administered." Bankruptcy Act § 2a(8), 11 U.S.C. § 11(a)(8) (repealed 1938). It is apparent that the 1938 amendment shifted focus from full administration, *e.g.* dealing with unadministered assets, to "cause" in a manner that represented an expansion of the reasons for reopening.

The "cause" standard for reopening was further affected by the 1973 Bankruptcy Rules: "A case may be reopened on application by the bankrupt or other person to administer assets, to accord relief to the bankrupt, or for other good cause." BANKR.R. 515 (1973) (first sentence). The Advisory Committee on Bankruptcy Rules explained that the rule was an elaboration of Bankruptcy Act § 2a(8), a prime purpose of which was to make clear (and disapprove cases to the contrary) that affording relief to the debtor is an acceptable basis for exercising discretion to reopen a case.[9]

---

9. The Advisory Committee's Note explained, in relevant part:

This rule is an elaboration of the provision of § 2a(8) of the Act authorizing estates to be reopened for cause shown. Although this provision was amended in 1938 to clarify the authority of the court to reopen for purposes other than the administration of newly discovered assets, see 1

Collier's ¶ 2.49 (1968), the courts have been reluctant to sustain exercises of this authority for the benefit of the bankrupt. See, *e.g., Saper v. Viviani,* 226 F.2d 608, 610–11 (2d Cir.1955), rev'g sub nom. *In re John Viviane [sic] & Son,* 132 F.Supp. 633 (S.D.N.Y.1955); *In re Perlman,* 116 F.2d 49 (2d Cir.1940) (Clark, C.J., dissenting), rev'g 34 F.Supp. 684 (S.D.N.Y.1940); *In re Barle-*

As no outer limits to "cause" are specified, reopening is a matter of judicial discretion. 1 COLLIER 14th ed. ¶ 2.49 (collecting cases).

The lowest common denominator of all three versions of the Bankruptcy Act's reopening standard is the presence of assets in need of administration. Thus, if the three parcels now in question constituted property vested in the trustee on April 27, 1936, then the case is presumptively appropriate to reopen.

## B

The factual basis for reopening is the existence of an interest of the estate in three parcels of real estate that were owned by Dunning Brothers on April 27, 1936.

The version of the Bankruptcy Act in effect when the case was filed in 1936 provided, in relevant part, that the trustee shall be "vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt, except insofar as it is to property which is exempt,[10] to all ... (5) property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him." Bankruptcy Act § 70a, 11 U.S.C. § 110(a) (1934).

It is of no consequence to this case that Congress later amended that provision in 1938, substituting "as of the date of the filing of the petition initiating a proceeding under this Act" in lieu of "as of the date he was adjudged a bankrupt." Bankruptcy Act § 70a, 11 U.S.C. § 110(a) (as amended, 1938). Property of this estate was fixed at the time the case was filed and must be construed in accordance with the law then in effect.

Although the "plain language" of the pre–1938 version suggests that the measuring date should be April 28, 1936, the date of adjudication, rather the date of filing, April 27, 1936, the Supreme Court had placed a gloss on the statute that made the date of filing control. The theory was that the "exclusive jurisdiction of the bankruptcy court is so far *in rem* that the estate is regarded as *in custodia legis* from the filing of the petition" and cannot be attached or transferred in the interval between filing and adjudication. *Acme Harvester Co. v. Beekman Lumber Co.*, 222 U.S. 300, 307–08, 32 S.Ct. 96, 56 L.Ed. 208 (1911).[11]

---

*an*, 279 F.Supp. 260 (D.Mont.1968). The grant of an application to reopen under this rule remains a matter of discretion of the court, but relief to the bankrupt is explicitly recognized as a proper cause for the reopening. A principal ground for refusing to reopen a case to enable a bankrupt to get a discharge has been the rule that the closing of an estate without the grant of a discharge is the legal equivalent of a denial of discharge. *Perlman v. 322 West Seventy–Second Street Co.*, 127 F.2d 716, 718–19 (2d Cir.1942); *In re Butts*, 123 F.2d 250, 251 (2d Cir.1941). This rule has been substantially qualified by § 17b of the Act, added by Pub.Law 91–467 [1970], and Rule 120(c) [dismissal of bankruptcy case is without prejudice]. See the Note accompanying the latter rule.

BANKR.R. 515 (Advisory Committee's Note) (1973).

**10.** In contrast, the Bankruptcy Code does not exclude exempt property from "property of the estate." 11 U.S.C. § 541 (2006)

**11.** The Supreme Court explained its gloss as follows:

It is true that under § 70a of the act of 1898 the trustee of the estate, on his appointment and qualification, is vested by operation of law with the title of the bankrupt as of the date he was adjudicated a bankrupt, but there are many provisions of the law which show its purpose to hold the property of the bankrupt intact from the time of the filing of the petition, in order that it may be administered under the law if an adjudica-

Hence, the controlling interpretation of Bankruptcy Act § 70a in effect in 1936 was that the title of the bankrupt to property vested in the trustee, upon qualification as trustee, as of the date of adjudication but related back to the date of filing. *Id.*; 4A COLLIER 14th ed. ¶ 70.05[3] (collecting cases). It follows that the date of filing is the date as of which the estate's interest in property is determined.

The title report presented as evidence in support of reopening reflects that Dunning Brothers owned, as of April 27, 1936, the fee interest in three railroad/levee parcels that have not subsequently been transferred.

■ As there appears to be property that vested in the trustee as of April 27, 1937, and that remains unadministered, the case is eligible to be reopened.

## C

The final question is whether anything about the 73–year interval from 1936 to 2009 warrants declining to reopen the case.

### 1

■ The first point to be made is that, in deciding to reopen a case, the bankruptcy court should do no more than determine that there is bankruptcy business to be done. In a Bankruptcy Code case, the question also includes whether to order appointment of a trustee; under the Bankruptcy Act, a trustee is mandatory.

Since the reopening question is limited, Bankruptcy Act practice permits such requests to be made by application that can be entertained ex parte and without notice. *In re Schreiber*, 23 F.2d 428, 430 (2d Cir. 1928); *In re Zimmer*, 63 F.Supp. 488, 489 (S.D.Cal.1945); 1 COLLIER 14th ed. ¶ 2.51. Bankruptcy Code practice requires motions, which likewise may be considered ex parte and without notice. Fed. R. Bankr.P. 5010; *Menk v. LaPaglia (In re Menk)*, 241 B.R. 896, 914 (9th Cir. BAP1999).

■ This reflects the understanding that reopening is, in substance, a ministerial act of little legal significance that does not affect the status of unscheduled property. *Staffer v. Predovich (In re Staffer)*, 306 F.3d 967, 972–73 (9th Cir.2002); *Menk*, 241 B.R. at 913–15. Under the *Acme Harvester/Lasater* doctrine, the unscheduled Dunning property has been continuously in custodia legis since April 27, 1936.

While courts sometimes conflate the reopening question with the merits of an underlying dispute, this creates a risk that the adversary process will be inappropriately truncated, or preempted entirely. *Menk*, 241 B.R. at 913–15.

■ In the context of unscheduled property, the question of whether the case should be reopened requires only a decision whether there may be unscheduled property that could be administered by a trustee. It is not an appropriate occasion to consider or decide whether defenses could be established against the trustee. So, for example, the equitable defense of laches is not relevant to the decision

---

tion in bankruptcy shall follow the beginning of the proceedings. [Examples omitted.] To permit creditors to attach the bankrupt's property between the filing of the petition and the time of adjudication would be to encourage a race of diligence to defeat the purposes of the act and prevent the equal distribution of the estate among all creditors of the same class which

is the policy of the law.... Pending the [adjudication] proceedings the law holds the property to abide the decision of the court upon the question of adjudication as effectively as if an attachment had been issued....

*Acme Harvester Co.*, 222 U.S. at 307–08, 32 S.Ct. 96.

whether to reopen a case, even though it may later be raised as a defense in the litigation that may follow. *Staffer*, 306 F.3d at 972–73.

Here, if there is property that may be administered by a trustee, then the case should be reopened and a trustee appointed. To the extent that equitable defenses may be raised against the trustee's claims to the unscheduled property, *Staffer* makes plain that those matters are to be presented and resolved through the adversary process after the case is reopened.

2

■ Long-settled bankruptcy law holds that property that is not scheduled does not lose its character as property of the estate after the case is closed. 4A COLLIER 14th ed. ¶ 70.07[2].

■ The first step of the analysis is that when the case is filed *all* interests in nonexempt property, scheduled or unscheduled, are *in custodia legis* of the bankruptcy court on an exclusive *in rem* basis. *E.g., Acme Harvester Co.*, 222 U.S. at 308, 32 S.Ct. 96; 4A COLLIER 14th ed. ¶ 70.07[2].

■ Second, title to unscheduled property does not revert to the debtor upon the closing of the case. *First Nat'l Bank v. Lasater*, 196 U.S. 115, 119, 25 S.Ct. 206, 49 L.Ed. 408 (1905). As the Supreme Court explained in *Lasater*, it "cannot be that a bankrupt, by omitting to schedule and withholding from his trustee all knowledge of certain property, can, after his estate in bankruptcy has been finally closed up, immediately thereafter assert title to the property on the ground that the trustee had never taken any action in respect to it." *Id., cited with approval, Stein*, 691 F.2d at 889–94 (Anthony Kennedy, J.).

■ To the extent that title to unscheduled property may remain in the debtor, it is merely bare legal title to property that actually is *in custodia legis*, to which the trustee who will be appointed on reopening has superior title. 4A COLLIER 14th ed. ¶ 70.07[2]. Thus, the Bankruptcy Act case law establishes, as the Collier treatise notes, "full *unrestricted* title to an *unadministered* asset does not automatically revert to the bankrupt upon the closing of the estate, absent circumstances showing the trustee's abandonment." *Id.* (emphasis in original).

It follows that the three unscheduled parcels now in question, which have not heretofore been administered, are still property of the estate in the 193 6 Bankruptcy Act case.[12]

■ There is no time limit for seeking to reopen. 1 COLLIER 14th ed. ¶ 2.49, at 291–92 n. 5 (collecting cases).

■ The question whether to reopen is a matter of discretion as to which the court is entitled to take into account surrounding circumstances, including the reasons advanced for reopening. 1 COLLIER 14th ed. ¶ 2.49, at 290 n. 4 (collecting cases).

12. The Bankruptcy Code reaches the same result and is explicit that unscheduled property remains property of the estate after the case is closed. If property is neither formally abandoned under § 554(a)-(b) nor otherwise administered during the case, then it is abandoned to the debtor only if it was scheduled as required under § 521(1). 11 U.S.C. § 554(c). If property is not abandoned under § 554(a)-(c) and has not otherwise been administered in the case, then, unless the court otherwise orders, it "remains property of the estate." 11 U.S.C. § 554(d). Although the automatic stay of acts other than against property of the estate expires no later than the time the case is closed, the stay of acts against property of the estate remains in force "until such property is no longer property of the estate." *Compare* 11 U.S.C. § 363(c)(1), *with id.* § 362(c)(2).

Thus, laches was occasionally recognized as a basis for not reopening a case under the Bankruptcy Act. 1 COLLIER 14th ed. ¶ 2.49, at 290–91 nn. 4–5. The Ninth Circuit once invoked laches to dispose of an appeal on another issue by disapproving an unappealed reopening that the parties did not request until 23 years after they knew of a putative cloud on title to *scheduled* property, during which interval intervening rights in the property had accrued and would be prejudiced. *Hull v. Powell,* 309 F.2d 3, 6–7 (9th Cir.1962). That case, however, was not a situation of unscheduled and unadministered property.

In *Staffer,* as noted, the Ninth Circuit held that the question of laches was not relevant to the question of reopening under the Bankruptcy Code and had to be raised separately in subsequent substantive litigation within the reopened bankruptcy case. *Staffer,* 306 F.3d at 972–73.

The instant case, by contrast, is the paradigmatic case of reopening to deal with unadministered real property that is unscheduled. This is merely the *Lasater* situation, which has always been the strongest justification for reopening under the Bankruptcy Act. There has been no sale of the property in the intervening 73 years. The two recorded post-bankruptcy easements, for highway and levee repair purposes, are of a nature that will not necessarily be prejudiced. No other rights appear to have accrued that would introduce a risk of unfairness. Sale should be straightforward. There is no other way to assure clear, and insurable, title can be conveyed. No useful purpose would be served by refusing to reopen.

3

There is an important bankruptcy policy to be enforced that is grounded on the premise that the integrity of the bankruptcy system depends in large part on full, candid, and complete scheduling of assets by debtors.

A belief that the mere passage of time before the discovery of unscheduled property, without more, can circumvent the bankruptcy trustee's power to deal with the property would constitute a perverse incentive to omit interests in property from schedules. The correct incentive should be the opposite, placing the burden of later overcoming the rights of the estate on the person who seeks to do so.

4

Indeed, the Bankruptcy Code enhanced the statutory tools for dealing with unscheduled property in a manner that improves incentives to prepare full, candid, and complete schedules.

First, Bankruptcy Code § 554(d) makes explicit the doctrine that unscheduled property remains property of the estate after the case is closed. 11 U.S.C. § 554(d); 5 COLLIER ON BANKRUPTCY ¶ 554.03 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2009) ("COLLIER 15th ed. rev."). In contrast, the Bankruptcy Act's analogue was as much judge-made doctrine as statutory.

Next, automatic enforcement of the protection of the postclosing property of the estate is provided by way of Bankruptcy Code § 362(c)(1), which extends the protection of the automatic stay to unscheduled property "until such property is no longer property of the estate." 11 U.S.C. § 362(c)(1). The Bankruptcy Act did not have a lingering automatic stay.

While indefinite perpetuation of property of the estate protected by the automatic stay is strong medicine, there is a limiting principle. Bankruptcy Code § 362 includes a statutory method for raising and establishing potential equitable exceptions so that a court may assure that enforcement of the unscheduled property provi-

sions does not, in qualifying circumstances, work unduly harsh and inequitable results.

A bankruptcy court is authorized by Bankruptcy Code § 362(d) to "annul" an automatic stay. 11 U.S.C. § 362(d). This permits relief from stay to be granted retroactively, the granting of which entails equitable analysis. *Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.)*, 129 F.3d 1052, 1054–55 (9th Cir.1997); *Williams v. Levi (In re Williams)*, 323 B.R. 691, 699–702 (9th Cir. BAP2005), *aff'd*, 204 Fed.Appx. 582 (9th Cir.2006); 3 COLLIER 15th ed. rev. ¶ 362.07[1]. By means of the power to annul the stay, a bankruptcy court has authority to prevent unduly harsh outcomes that would offend principles of equity.

■ It is against this background that courts have considered the legal status of acts taken in violation of the Bankruptcy Code's automatic stay. In most circuits, including this circuit, acts in violation of the automatic stay are void ab initio, not merely voidable, and equitable adjustments are made through the process of the statutory stay relief remedy of annulling the stay. *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 572–73 (9th Cir. 1992); *accord, Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969 (1st Cir.1997); *Appeal of Prudential Savings Bank (In re Siciliano)*, 13 F.3d 748, 750 (3d Cir.1994); *Job v. Calder (In re Calder)*, 907 F.2d 953, 956 (10th Cir.1990); *48th St. Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th St. Steakhouse, Inc.)*, 835 F.2d 427, 431 (2d Cir.1987); *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 675 (11th Cir.1984); *Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir.1984); 3 COLLIER 15th ed. rev. ¶ 362.11[1]; *cf., Kalb v. Feuerstein*, 308 U.S. 433, 438–39, 60 S.Ct. 343, 84 L.Ed. 370 (1940).

Some circuits describe actions in violation of the stay as voidable. *Jones v. Garcia (In re Jones)*, 63 F.3d 411, 412 (5th Cir.1995); *Bronson v. United States*, 46 F.3d 1573, 1578–79 (Fed.Cir.1995); *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir.1993).

Even in "voidable" circuits, however, a presumption exists in favor of enforcing the stay, which can be overcome only by equitable considerations. Thus, the Sixth Circuit concluded, "actions taken in violation of the stay are invalid and voidable and shall be voided absent limited equitable circumstances." *Easley*, 990 F.2d at 911.

■ In short, the protection afforded by Bankruptcy Code § 362(c)(1) to property of the estate remaining after the case is closed spells trouble for anyone dealing with unscheduled property that is property of the estate.

\* \* \*

This opinion should be of more than an antiquarian interest. Unscheduled property presents a greater problem under the Bankruptcy Code than under the Bankruptcy Act because of the explicit enforcement mechanisms that result from the interplay of Bankruptcy Code §§ 362(c)(1) and 554(d). The discovery of omitted property may lead to reopening of a bankruptcy case, even seven decades later.

The case is appropriate to be reopened in order to deal with unscheduled property that has not heretofore been either administered or abandoned. There is no defect in this court's jurisdiction over the Bankruptcy Act case. The order reopening the case is ratified.