

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>CAMBRIDGE LAND COMPANY II, LLC;<br>CAMBRIDGE LAND COMPANY, LLC,<br>Debtors. | BAP Nos. OR-20-1110-BKT<br>OR-20-1111-BKT<br>(Related Appeals)<br><br>Bk. Nos. 3:13-bk-36568-PCM<br>3:13-bk-36592-PCM |
| SANDFORD LANDRESS; CHARLES<br>MARKLEY; GREENE & MARKLEY P.C.,<br>Appellants,<br>v.<br>CAMBRIDGE LAND COMPANY II, LLC;<br>CAMBRIDGE LAND COMPANY, LLC;<br>ALAN N. O'KAIN; VICTORIA E. O'KAIN,<br>Appellees. | **OPINION** |

Appeal from the United States Bankruptcy Court
for the District of Oregon
Peter C. McKittrick, Bankruptcy Judge, Presiding

APPEARANCES:
Julie M. Engbloom of Tadjedin Thomas & Engbloom Law Group LLP argued for
appellants Sanford Landress, Charles Markley, and Green & Markley P.C.

Before: BRAND, KLEIN,[1] and TAYLOR, Bankruptcy Judges.

Opinion by Judge Brand
Concurrence by Judge Klein
BRAND, Bankruptcy Judge:

---

[1] Hon. Christopher M. Klein, United States Bankruptcy Judge for the Eastern District of
California, sitting by designation.

## INTRODUCTION

Appellants appeal orders reopening the debtors' previously dismissed chapter 11[2] bankruptcy cases. The cases were reopened for administrative purposes only to allow the debtors to amend their schedules. Appellants challenged the orders, not because they should be reversed, but because appellants believed that the bankruptcy court should have administered the newly scheduled assets. But appellants were not creditors and were otherwise not directly and adversely affected pecuniarily by the orders of the bankruptcy court. Thus, they have no standing to appeal. Further, appellants are mistaken about the authority of the bankruptcy court to administer assets after the dismissal of a chapter 11 case. Once the case is dismissed, all assets, scheduled or unscheduled, revest in the debtor. There is nothing for the bankruptcy court to administer. Because appellants lack standing to appeal from these orders, we DISMISS for lack of jurisdiction.[3]

## FACTS

Appellees Alan and Victoria O'Kain are husband and wife. They are both attorneys and the principals of debtors-appellees Cambridge Land Company, LLC and Cambridge Land Company II, LLC (the "LLCs"), both now inactive

---

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

[3] The motions to dismiss filed by Cambridge Land Company, LLC and Cambridge Land Company II, LLC are DENIED, because they failed to appear in these appeals and have waived their right to do so. *See* BAP Conditional Orders of Waiver entered December 1, 2020.

LLCs. Prior to September 2014, the LLCs each owned and operated an apartment complex (the "Apartment Complexes").

In 2013, the lender for the Apartment Complexes began two foreclosure proceedings against the LLCs and moved for the appointment of a receiver in each case. Meanwhile, the O'Kains sought legal advice about filing chapter 11 cases for the LLCs, to save the Apartment Complexes from foreclosure and to avoid the loss of equity and the possible appointment of receivers. The O'Kains met with bankruptcy attorneys Charles Markley and Sanford Landress of the law firm Greene & Markley, PC (the "Malpractice Defendants"). The LLCs entered into retainer agreements with the Malpractice Defendants. The scope of their legal work was described as "research and advice concerning feasibility of Ch. 11 Bankruptcy filing."

Ultimately, the Malpractice Defendants advised that chapter 11 bankruptcy was not feasible for either of the LLCs and recommended that the entities file chapter 7 cases instead. Rejecting that advice, the O'Kains retained another bankruptcy attorney to file chapter 11 cases for the LLCs. By that time, the state court had appointed a receiver in each case.

## A.    The chapter 11 filings

The LLCs filed chapter 11 bankruptcy cases in October 2013. No legal malpractice claim against the Malpractice Defendants was disclosed in either of their schedules.

Later, the bankruptcy court approved the sale of the Apartment Complexes, which resulted in no payment to unsecured creditors. With the

Apartment Complexes sold and the LLCs' estates administratively insolvent, the LLCs moved to dismiss their chapter 11 cases under § 1112(b)(1). No one objected.

The bankruptcy court entered an Order of Dismissal and Administratively Closing Case in each of the LLCs' chapter 11 cases. The case dismissal orders, which appear to be standard orders for the District of Oregon, stated the following:

> **This case is dismissed; this case is closed, but only for administrative purposes**; and the court shall retain jurisdiction over any adversary proceeding pending at the time of closure. . . . The court will not entertain a motion to reopen this case, or a motion for reconsideration of this order, unless all unpaid [filing] fees are paid (emphasis added).

## B. The state court litigation over the malpractice claim

In 2015, the O'Kains and the LLCs filed a complaint against the Malpractice Defendants in state court. In short, they alleged that the Malpractice Defendants' legal advice, to allow the receivership hearings in the LLCs' cases to go forward and to not file for bankruptcy beforehand, was detrimental and caused them damages of $1.625 million.

As relevant here, the parties ultimately agreed that the malpractice claim was a prepetition asset of the LLCs, but they disputed whether it belonged to the LLCs or their respective bankruptcy estates. The Malpractice Defendants argued that the undisclosed malpractice claim was still an asset of the LLCs' bankruptcy estates despite the case dismissals and that the estates were the real party in interest, not the LLCs. Ultimately, the state court agreed with the parties'

4

suggestion to have the bankruptcy court decide whether the malpractice claim was property of the LLCs' estates, and it ordered that they move to reopen their chapter 11 cases and schedule the malpractice claim.

**C.     Motions to reopen the LLCs' bankruptcy cases**

The LLCs then moved to reopen their chapter 11 cases. They stated that, since the case dismissals, they learned of malpractice claims that they or their principals may have against certain parties related to legal advice rendered prepetition, that legal action has been commenced on such claims, and that they had been ordered by the state court to amend their bankruptcy schedules to include the malpractice claims. The LLCs further stated that no remaining unsecured creditors existed and that administration of the malpractice claims would not serve to benefit them, their creditors, or their bankruptcy estates. The Malpractice Defendants filed a response.[4]

The LLCs filed their amended schedules disclosing the malpractice claim. Notice was served on creditors and parties of interest. No response was filed by any creditors or the United States Trustee.

After a hearing, the bankruptcy court orally granted the motions to reopen. The court opined that it could not "reopen" the dismissed chapter 11 cases under § 350(b),[5] because they were not "closed" under § 350(a).[6] However, it would

---

[4] The Malpractice Defendants also removed the malpractice action to the bankruptcy court, which ordered that it be remanded to the state court. The Malpractice Defendants did not appeal that order.

[5] Section 350(b) provides: "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."

[6] Section 350(a) provides: "After an estate is fully administered and the court has

reopen the cases for "administrative purposes only," to allow the LLCs to file amended schedules disclosing the malpractice claim. After entry of written orders, these timely appeals followed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We discuss our jurisdiction below.

## ISSUE

Do the Malpractice Defendants have standing to challenge the orders on appeal?

## STANDARD OF REVIEW

While standing to appeal is generally a legal issue reviewed de novo, whether an appellant is a "person aggrieved" by the order appealed is a question of fact we review in the first instance. *See Palmdale Hills Prop., LLC v. Lehman Com. Paper, Inc. (In re Palmdale Hills Prop., LLC)*, 654 F.3d 868, 873 (9th Cir. 2011).

## DISCUSSION

We lack jurisdiction over appeals when the appellant lacks standing. *See Paine v. Dickey (In re Paine)*, 250 B.R. 99, 104 (9th Cir. BAP 2000). "Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255 (1994). We have an independent duty to consider an appellant's standing. *Aheong v. Mellon Mortg. Co. (In re Aheong)*, 276 B.R. 233, 238 (9th Cir. BAP 2002). As the appellant, the Malpractice Defendants have an affirmative duty to establish

---

discharged the trustee, the court shall close the case."

6

standing. *Hasso v. Mozsgai (In re La Sierra Fin. Servs., Inc.)*, 290 B.R. 718, 726 (9th Cir. BAP 2002) (citing *Bennett v. Spear*, 520 U.S. 154, 167-68 (1997)).

To have standing to appeal a decision of the bankruptcy court, an appellant must show that it is a "person aggrieved" who was "directly and adversely affected pecuniarily by an order of the bankruptcy court[.]" *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442-43 (9th Cir. 1983). A "person aggrieved" is someone whose interest is directly affected by the bankruptcy court's order, either by a diminution in property, an increase in the burdens on the property, or some other detrimental effect on the rights of ownership inherent in the property. *Id.*

The Malpractice Defendants have failed to demonstrate standing in these appeals. They are not creditors of the LLCs; they are the defendants in state court litigation initiated by the LLCs. The orders reopening the LLCs' chapter 11 cases for administrative purposes did not diminish the Malpractice Defendants' property, increase their burdens on any property, or detrimentally affect their rights of ownership inherent in any property. Put simply, they are not a "person aggrieved" by those orders. The orders at issue left the Malpractice Defendants to defend against the malpractice action in state court, and did not prevent them from asserting any defenses in that action, which they have been capably asserting since 2015. *See Menk v. LaPaglia (In re Menk)*, 241 B.R. 896, 913-14 (9th Cir. BAP 1999) ("little happens" in the reopening of a bankruptcy case "that would give anyone standing to complain about [it].").

When questioned about their standing at oral argument, the Malpractice Defendants expressed their concern about the time and expense that could be wasted if they continued litigating the malpractice action against what they argue is the wrong plaintiff. The Malpractice Defendants' fear is based more on conjecture than fact.

First, the "closing" in these cases was an administrative matter – a mere closing of the bankruptcy file – as opposed to a statutory closing under § 350(a). *See Goldenberg v. Deutsche Bank Nat'l Tr. Co. (In re Papazov)*, BAP No. CC-12-1584-KiClD, 2013 WL 2367802, at *9-10 (9th Cir. BAP May 30, 2013), *aff'd*, 610 F. App'x 700 (9th Cir. 2015) (citing *Armel Laminates, Inc. v. Lomas & Nettleton Co. (In re Income Prop. Builders, Inc.)*, 699 F.2d 963, 965 (9th Cir. 1982) (per curiam)); *see also Hashiman v. Danielson (In re Hashiman)*, BAP No. CC-20-1107-TaLS, 2020 WL 5914605, at *2 (9th Cir. BAP Oct. 5, 2020) (a bankruptcy case can only be reopened under § 350(b) if it was first closed under § 350(a), rather than dismissed) (citing *Bowman v. Casamata (In re Bowman)*, 526 B.R. 802, 804 (8th Cir. BAP 2015)); *Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth LLP (In re Pavelich)*, 229 B.R. 777, 781 (9th Cir. BAP 1999) ("Reopening a dismissed case is an oxymoron – since the consolidated cases were dismissed rather than closed, there are no closed cases to reopen.") (citing *In re Income Prop. Builders, Inc.*, 699 F.2d at 965). Further, the bankruptcy court's administrative reopening, which is an action contemplated by the dismissal orders, did not vacate the dismissals, reinstate the bankruptcy cases, or create any bankruptcy estates to administer. It also did not

8

trigger an automatic stay.[7] *See In re Menk*, 241 B.R. at 914. No one has moved to vacate the dismissals, and no creditor or the United States Trustee has asked the bankruptcy court to conduct any further proceedings regarding any alleged failure of the LLCs to list the malpractice claim on their schedules.

More importantly, when the LLCs' chapter 11 cases were dismissed on December 30, 2014, **all** of the estate property revested in them at that time under § 349(b)(3), "**regardless of whether the property was scheduled**." *Id.* at 912 (emphasis added) (citing § 349); *see also Cohen v. Tran (In re Tran)*, 309 B.R. 330, 334 (9th Cir. BAP 2004), *aff'd*, 177 F. App'x 754 (9th Cir. 2006) (dismissal under § 349(b) is intended to "'undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case.'") (citations omitted). A dismissal under § 349(b) is distinct from a fully administered case. Contrary to the Malpractice Defendants' argument, § 554(d)[8] has no application after a dismissal. With a dismissal, there is no estate and there are no assets remaining to be abandoned or administered. *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 485 (2d Cir. 2014). To the extent that the LLCs' estates held the malpractice claim against the Malpractice Defendants, that claim is now owned by the LLCs. But in neither case is the claim property of a bankruptcy estate. In short, the LLCs are the proper plaintiffs.[9]

---

[7] Notably, a reopening under § 350(b) would not do any of these things either.

[8] Although § 554(d) prescribes that property of the estate that is not abandoned and that is not administered in the case remains property of the estate, the dismissal of the case under § 349 automatically revests all estate property in the prior owners. § 349(b)(3); *In re Menk*, 241 B.R. at 912.

[9] We make no determination as to whether the O'Kains are also owners of this claim.

9

**CONCLUSION**

Accordingly, because the Malpractice Defendants lack standing to appeal the orders administratively reopening the LLCs' chapter 11 cases, we must DISMISS the appeals.

Concurrence begins on next page.

KLEIN, Bankruptcy Judge, concurring:


I join the majority decision and write separately to transcend our formal analysis in the interest of fostering informed communication with state courts by explaining the distinction between "closing" and "dismissing" a bankruptcy case in terms that might be helpful in future cases.

This appeal results from the recognition by an Oregon state court that a prepetition cause of action was omitted from bankruptcy schedules and that court's assumption that it remains property of the bankruptcy estate that requires the parties to return to bankruptcy court and amend their schedules. Ordinarily, that is the prudent course.

The general rule in bankruptcy, dating back to 1905, is that unscheduled interests in property are not abandoned when a bankruptcy case is "closed," but rather remain property of the estate indefinitely. *First Nat'l Bank v. Lasater*, 196 U.S. 115, 119 (1905).

To be precise, when a bankruptcy case has been fully administered, it is "closed," in consequence of which (unless the court orders otherwise) all property that has been scheduled is "abandoned to the debtor" but unscheduled property is neither abandoned nor administered and remains property of the estate, essentially forever. 11 U.S.C. § 554(c) & (d).

An example of the force of this rule is the reopening in 2009 of a bankruptcy liquidation case filed in 1936 so that a trustee could be appointed to

11

administer an unscheduled interest in real property. *In re Dunning Bros.*, 410 B.R. 877 (Bankr. E.D. Cal. 2009).

From the standpoint of state courts, perhaps the most common occurrence is when a plaintiff is discovered to have omitted the cause of action from schedules in a prior bankruptcy case. The consequence is that the plaintiff lacks authority over the cause of action and is not the real party in interest. Although defense counsel often fallaciously assert judicial estoppel (i.e., the estoppel of inconsistent positions), the correct solution is to recognize that the bankruptcy trustee is the real party in interest as the custodian of all property of the estate. Thus, state courts are encouraged to send the parties to the bankruptcy court to clear up the matter.

When an unscheduled asset, such as a prepetition cause of action surfaces, the bankruptcy court will reopen the case and order a trustee appointed who can deal with the asset with a view to whether it will lead to a recovery that can be distributed to creditors. The trustee with either "abandon" the cause of action as being of inconsequential value and benefit to the estate, or liquidate it by prosecuting it, settling it, or selling it to the high bidder.

What is different about the situation in this appeal is that the prior cases under the Bankruptcy Code were "dismissed," rather than "closed." When a case is dismissed, then (except to the extent the bankruptcy court orders otherwise) the dismissal "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case" under the Bankruptcy Code. 11 U.S.C. § 349(b)(3).

Thus, when the bankruptcy judge in this instance was asked to "reopen" cases that had been dismissed, the judge was presented with the contradiction that an unscheduled cause of action could not be property of the estate. Jurisdiction had been retained upon dismissal only with respect to adversary proceedings actually pending at the time of dismissal in 2014. All other property of the estate, scheduled and unscheduled, revested upon the dismissals of the cases; amending schedules would have no legal effect; and there was no bankruptcy business to which to attend. For that reason, the bankruptcy judge fashioned a measure of reopening "for administrative purposes," apparently as an accommodation to the state court's requirement that schedules be amended so there would be no doubt about the state court's authority.

We do not wish to chill the laudatory instinct of state courts to order parties to clear up uncertainties about bankruptcy issues – such as property of the estate or the applicability of the automatic stay – in bankruptcy court, especially when the validity of activity in the state court is uncertain. Sometimes the result is that the bankruptcy court rules there is no bankruptcy issue impeding the state court, which is a helpful and perfectly satisfactory outcome for the state court.

I understand our ruling, as well as that of the bankruptcy judge, to be that the statutory revesting upon dismissal means there is no property of the estate in these cases, regardless of what the schedules may have said in 2013 and regardless of how they might be amended after the dismissals that occurred in 2014. Since the appellants can point to no consequence that would adversely

13

affect them, it is correct to say that they lack standing. One might also say that the property of the estate question is moot or that the representations by appellants lack merit. In any event, the state court now has a formal determination that amending the schedules after the dismissals of this cases is of no legal consequence from the standpoint of bankruptcy.

We express no view regarding what, if anything, the Oregon state court should do in consequence of the omission from the schedules of the prepetition cause of action.